## MILHOUS v. SALLY.

1. FRAUDULENT AGREEMENT—PARTICEPS CRIMINIS.—A complaint in equity which alleged that the heirs at law of a totally insolvent intestate had agreed that his lands should be sold under a judgment held by his widow as assignee, for the use of the widow for life and then for the children, no money to be paid on the bid, and that some of them should hold the land as agents for all, and the bid was made on the representation that it was for the benefit of the family, and that the widow was now dead, states no cause of action in favor of the children out of possession against those in possession which would entitle plaintiffs to ask the aid of a Court of Equity in obtaining partition, as the complaint developed a scheme whereby the heirs acquired possession of this land by chilling the biddings.

2. IBID.—IBID.—The plaintiffs standing on precisely the same footing as the defendants in this fraud upon their ancestor's creditors, except that defendants are in possession, the court will apply the maxim, *Ex dolo malo non oritur actio.*

3. IBID.—IBID.—TENANTS IN COMMON.—The allegation that plaintiffs and defendants were tenants in common of this land, when taken in connection with the other allegations of the complaint, referred to their alleged rights under the fraudulent purchase, and the complaint could not be saved from the demurrer on the suggestion that this allegation declared the parties tenants in common by virtue of their inheritance—their father being insolvent, and their mother having no real interest, except as judgment creditor.

4. AMENDMENTS—MOTION.—*Doubted* whether a motion to amend can be entertained when made for the first time before the Circuit Judge on exceptions alleging error in the master's finding that the complaint does not state a cause of action.

5. IBID.—Amendments to this complaint were properly refused which would not have relieved the parties to the action and their intestate mother from the fraudulent scheme alleged.

6. REMITTITUR—TIME.—Where the opinion is filed on' March 21, the clerk properly sent down the remittitur on Monday, April 1. An order passed on April 2 to stay the remittitur was inoperative, and the remittitur cannot be recalled.

7. PETITION FOR REHEARING.—No grounds exist for a rehearing of this case.

Before GARY, J., Orangeburg, September, 1894.

Action by Caroline A. Milhous *et al.* against J. Martin Sally *et al.*, commenced in May, 1893.

*Messrs. D. O. Herbert* and *T. S. Moorman*, for appellants.

*Messrs. Henderson Bros.*, contra.

March 21, 1895.   The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER.   The controversy presented for the determination of the court in this case, arises upon a demurrer to the complaint, upon the ground that the facts therein stated are not sufficient to constitute a cause of action. The case was referred to the master to hear and determine all of the issues therein, and, at the first reference, before any testimony was offered, the defendants interposed a demurrer based upon the several grounds stated in the master's report, all of which were overruled except the fourth, to wit: that the contract was an illegal one and in fraud of the rights of others, and, therefore, will not be enforced "in a court of equity," which was sustained, and the master reported accordingly. To this report plaintiffs excepted, and the case came before the honorable Ernest Gary, judge of the Fifth Circuit, who overruled all of the exceptions, and rendered judgment confirming the report of the master.   In his order rendering this judgment his honor says: "At the hearing of the case, the plaintiffs asked leave to amend the complaint by striking from the fourth paragraph thereof the words, 'numerous creditors,' and inserting in lieu thereof the words 'Ann C. Sally;' and by adding to paragraph seven of the said complaint the words, 'and said representations were made without any authority, and solely upon their own responsibility;' this motion is refused, for the reason that there is nothing to amend, and even if allowed, the

amendment would not cure the defects in the complaint."
From this judgment plaintiffs appealed upon the several
grounds set out in the record; and defendants, according to the
proper practice, gave notice that, at the hearing, they would
contend that the judgment of Judge Gary should be sustained
upon other grounds likewise set out in the record.

Our first inquiry, obviously, is, what are the allegations of
the complaint? That paper is too long for insertion here. We
will, however, proceed to state, substantially, what we under-
stand to be the facts therein stated, and the relief demanded.

*First.* That one John A. Sally departed this life some time in
the year 1870, intestate, being seized and possessed, at the time
of his death, of certain real estate described in the complaint.

*Second.* That prior to his death, said John A. Sally confessed
a judgment in favor of certain persons named, for the sum of
ten thousand dollars, and that thereafter said judgment was
duly assigned, for value, to Mrs. Ann C. Sally, the wife of the
said John A. Sally, but whether this assignment was made be-
fore or after his death, does not distinctly appear, though we
infer from the order in which the statements appear in the
complaint, that it was before his death; but we may say that
we do not see that this is material.

*Third.* The complaint sets forth the names of the heirs whom
the said John A. Sally left surviving him, and goes on to state
the names of those who succeeded to the estates of such of the
heirs as have since died.

*Fourth.* In the fourth paragraph of the complaint the allega-
tions of the complaint are as follows: "That the said John A.
Sally, at the time of his death, was largely indebted to numer-
ous creditors and was totally insolvent, and his said heirs at
law found that it was necessary after his death that all of his
property, both real and personal, should be sold, and applied
to the payment and satisfaction of his debts and liabilities."

*Fifth.* That on the      day of      A. D. 1871, the heirs at
law of said John A. Sally held a meeting, "for the purpose of
coming to an agreement in reference to the sale of the estates
of the said John A. Sally, deceased; that it was then and there
agreed, by and between the said heirs at law, including the

widow, Ann C. Sally (and J. George H. Sally and J. Martin Sally being present and parties to the said agreement), that all of the real estate of which the said John A. Sally died seized and possessed, and hereinbefore mentioned and described, should be sold under the judgment in favor of John F. and Henry Hartzog, executors, then held by the said Ann C. Sally, and that the real estate should be bid in by one or more of the said heirs at law as the agent for all of said heirs, and that the said lands should be held by them in trust for the support of their mother, the said Ann C. Sally, for and during the term of her natural life, and at her death to be divided amongst all the heirs at law of the said John A. Sally and Ann C. Sally, share and share alike, according to law and the statute of distributions, the child or children of deceased children to take by representation the parent's share."

*Sixth.* That in accordance with the said agreement the said lands were sold, under said judgment, some time in the year 1871, and tracts Nos. 1, 4, and 5 were bid in by the said J. George H. Sally, tract No. 2 by the plaintiff, R. Adeline Price, and tract No. 3 by J. Martin Sally, one of the defendants.

*Seventh.* The seventh paragraph of the complaint reads as follows: "That the said lands were bought in by the said parties as the agents and representatives of all of said heirs at law, acting under said agreement with them; that by reason thereof and by holding themselves out as representing and bidding for the widow and family under said agreement, they were enabled to bid off the property at a very low price, and very much less than its actual market value; that under said agreement the said parties were not required to pay any portion of the purchase money bid for the said lands, and they did not pay any portion thereof, but took possession of said lands and continued to hold the same under the trusts imposed thereon, for the benefit and support of the said Ann C. Sally during her lifetime, rendering to her the rents, issues, and profits arising therefrom."

*Eighth.* That the said Ann C. Sally departed this life, intestate, prior to the commencement of this action, leaving as her heirs at law and distributees the persons named in the complaint.

21—43

*Ninth.* That since the death of the said Ann C. Sally the said J. George H. Sally, up to the time of his death, and his heirs since, and the said J. Martin Sally, have continued in the possession and enjoyment of the lands bid in by them, and have refused to recognize the existence of the agreement hereinbefore set forth, and have repudiated the trust created by said agreement, and have claimed said lands as their own, and have attempted to dispose of portions thereof to third parties.

*Tenth.* That the defendant, J. Martin Sally, and the heirs at law of the said J. George H. Sally are in possession of said real estate, and wrongfully withhold the same from plaintiffs.

*Eleventh.* That certain of the defendants named in the complaint are in possession of portions of said real estate, with full notice of the agreement hereinbefore set forth, and are supposed to claim interest in said portions.

*Twelfth.* "That the plaintiffs and defendants, the heirs at law of the said John A. Sally and Ann C. Sally, are tenants in common of the said real estate hereinbefore mentioned and described, and that they own no other lands as tenants in common in this State."

*Thirteenth.* That certain of the defendants named in the complaint are minors.

Judgment is demanded as follows: 1st. That the said agreement between the heirs at law of the said John A. and Ann C. Sally be specifically performed.   2d. That the purchasers of the said land, under said judgment, be declared trustees of the same for the benefit of the said heirs at law.   3d. That said J. Martin Sally and the heirs of J. George H. Sally be required to account for the rents and profits of said land.   4th. That the said real estate be partitioned among the several parties in interest, according to their respective interests therein, but if that be impracticable, then that the same be sold, and the proceeds divided amongst the several parties, according to their respective interests.

Upon these facts, all of which, under the demurrer, must be assumed to be true, the plaintiffs rest their claim for relief in the Court of Equity, and the question is, whether such facts are sufficient to justify that court in lending its aid

in affording the relief demanded. It must be kept in mind throughout this discussion that these plaintiffs never had any legal right to, nor even any interest in, the land which is the subject of this action, for one of the facts stated in the complaint, which really constituted the moving cause of the agreement upon which plaintiffs based their claim, is, that the estate of their ancestors, whose property the land was, "was totally insolvent," and hence these heirs could have no lawful claim on said property until the debts of the ancestor were paid, for which purpose the said property was confessedly insufficient. Indeed, even the widow, Mrs. Ann C. Sally, had no *legal* interest in the *estate* of her deceased husband, for at most she only had a lien thereon as the holder of the Hartzog judgment. The manifest object of the agreement was to so arrange matters as that the rights of creditors should be entirely disregarded, and the property of the insolvent ancestor of these plaintiffs and the other heirs should be preserved for their own use.

It seems to us, that the bare statement of such an agreement is quite sufficient, even without citing any authority, to show that a Court of Equity would never lend its aid to the carrying out such a scheme, even amongst the parties to such agreement, for it would be subversive of every principle of equity and good conscience. But we are not left without authority upon the subject, as we shall presently show. The real purpose and actual effect of the agreement which the plaintiffs are seeking to enforce was to have the lands which constitute the subject-matter of this controversy sold under the Hartzog judgment and bought in for the benefit of those who, as we have said, had no legal interest therein, and this purpose was intended to be, and was, in fact, effected by that feature of the scheme allowing some of the heirs to bid in the property, under representations that they were bidding for the benefit of the family, whereby they obtained the property "at a very low price and very much less than its market value," and what is more, were not to be required to pay, and did not, in fact, pay, even such "very low price." No other construction can be placed upon the allegations contained in the seventh paragraph of the complaint, hereinabove distinctly set out. This was practically

nothing more nor less than a combination amongst the heirs to obtain the property of their insolvent ancestor for their own benefit, at the expense of creditors, by chilling the biddings, when it was offered for sale under legal process by the sheriff. It is well settled that such an arrangement will never receive the sanction of a Court of Equity, but, on the contrary, that court, when appealed to by third persons, whose legal rights have thus been disregarded and defeated, will unhesitatingly set aside the whole transaction.    Ever since the case of *Hamilton* v. *Hamilton*, 2 Rich. Eq., 355, the doctrine above stated has been regarded as firmly established in this State, and that case has been recognized and followed in a number of other cases, the last being *Herndon* v. *Gibson*, 38 S. C., 357.

It is urged, however, that it would be inequitable to allow those who had bid off the land, to retain the same at the expense of the other heirs.    That consideration is entitled *to no* favor, and has never received any at the hands of a Court of Equity when urged by those who participated in the fraudulent arrangement by which such an advantage was acquired by the defendants.    It does not approve the conduct of any of the parties to the fraudulent arrangement, but simply leaves them in the situation in which they have placed themselves, and will not lend its aid to relieve any of them.    As is said by Dunkin, Ch., in *Hamilton* v. *Hamilton*, *supra*, such transaction "can be enforced by none of the parties to it, *even against each other*" (italics ours.)    See to same effect, *Baggott* v. *Sawyer*, 25 S. C., 405, where it was held that parties to the conspiracy cannot obtain the aid of the court in specifically enforcing their illegal agreement with their coconspirators.

As is said by Ld. Mansfield in *Holman* v. *Johnson*, 1 Cowp., 341: "The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant.    It is not for his sake, however, that the objection is ever allowed, but it is founded in general principles of policy, which the defendant has the advantage of contrary to real justice as between him and the plaintiff, by accident, if I may so say.    The principle of public policy is this: *ex dolo malo non oritur actio.*    "No court will lend its aid

to a man who founds his cause of action upon an immoral or illegal act." And as is said by Dixon, C. J., in *Clemens* v. *Clemens*, 28 Wisc., 637 (9 Am. Rep., at page 531), after making the above quotation from Lord Mansfield: "The principle or policy of the law, therefore, is to reject the suit of and reprove the plaintiff for his wrong, not to reward the defendant. The plaintiff must be punished, even though it be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself. * * * The suit of the party compelled to seek the aid of the courts in order to obtain the fruits of his own fraud or wrong must be dismissed, although it may result in unjustly giving to the other equally culpable party the entire benefit of them." See to same effect, 1 Pom. Eq. Jur., § 401, where, amongst other things, that author says: "Where two or more have entered into a fraudulent scheme for the purpose of obtaining property in which all are to share, and the scheme has been carried out so that all the results of the fraud are in the hands of one of the parties, a Court of Equity will not interfere on behalf of the others to aid them in obtaining their shares, but will leave the parties in the position where they have placed themselves." And he cites two cases, *Johns* v. *Norris*, 7 C. E. Green., 102, and *Walker* v. *Hill*, *Ibid.*, 513, in support of his text, which are not distinguishable in principle from the case now under consideration.

It is earnestly contended on the part of the appellants that the maxim, *in pari delicto*, &c., is not of universal application, but is subject to certain limitations; and 1 Pom. Eq. Jur., § 403, is cited to sustain such contention. It is true, that certain limitations to that maxim are there laid down by that distinguished author, but we are unable to see that this case falls under either of the limitations there laid down. In the first place, we do not see how it can be said that any of the parties to the illegal agreement upon which the plaintiff's whole case rests, were not in equal fault; for while it is true that the said J. Martin Sally and J. George H. Sally were the parties who actually bid off the land, yet it is distinctly alleged that, in doing so, they were merely acting as the agent of all the heirs, under the terms of

the agreement to which they were all parties. Their act, therefore, was the act of all. Nor does it appear that any of the heirs were minors, or under any other disability at the time the agreement was entered into, and the fact that some of the heirs—those who have become so by reason of the death of some of the original heirs—are *now* minors, cannot affect the question, for such heirs must stand in the shoes of those under whom they claim, and can have no higher rights than their ancestors. Nor does it appear that any of the heirs were induced by any false representations made to them by either Martin or George Sally to enter into the agreement, or that they advanced any money or parted with any property of their own in pursuance of said agreement. In fact, nothing appears to place the other heirs in a better or more favorable light before the court than that in which Martin and George Sally stood. They all equally participated in the common design to obtain property to which they never had any claim either legal or equitable; at the expense of the creditors of their insolvent ancestor, by combining together to buy the property at a sacrifice when offered for sale under legal process.

We think it will be found that in the cases cited by appellants other elements entered which are absent in this. For example, in *Clemens* v. *Clemens, supra,* the plaintiff and defendant entered into an arrangement, instigated by defendant, whereby plaintiff, for the purpose of protecting his property against a suit then pending against him, was to convey to defendant, who was his son, a certain tract of land; but, by the fraud of the defendant, the conveyance was made so as to include another tract of land, which was protected by the homestead law, and it was held that the conveyance should be set aside as to the tract included in the conveyance by defendant's fraud, which was altogether outside of and not in any way dependent upon the agreement to defraud plaintiff's creditors. So in *Harper* v. *Harper,* 85 Ky., 160 (7 Am. St. Rep., 583), the plaintiff, who was an aged lady, was induced, by the false representations of her son, in whom she had implicit confidence, to convey her property to the son, with a view to avoid the effect of a threatened suit for slander, which, however, was never

brought, and it was held that the plaintiff was entitled to relief on account of the fraud practiced upon her by her son, notwithstanding the fact of her intention to evade the alleged suit for slander; the court resting its decision upon the ground that the parties did not stand upon an equal footing, and that defendant had obtained the consent of his mother to execute the deed by undue influence and false representations. In other of the cases it will be found that the defendant had, by reason of the fraudulent agreement, obtained from the plaintiff money or property to which the plaintiff was lawfully entitled, and for which defendant was held accountable.

We do not think that the plaintiff's case, as stated in their complaint, brings it within any of the limitations insisted upon by appellants, and hence we agree with the Circuit Judge, that the facts stated in the complaint are not sufficient to constitute a cause of action.

The attempt to sustain the complaint under the allegation in the 12th paragraph, that plaintiffs and defendants, as heirs at law of John A. Sally and Ann C. Sally, are tenants in common of the lands, must fail, for those allegations, read in connection with the other allegations in the complaint, must be construed that they were tenants in common *under the terms of the agreement* relied on, as such other allegations show clearly that they could not be tenants in common, *qua* heirs, as John A. Sally died insolvent, leaving nothing for them to inherit, and Ann C. Sally never had any right or title to the said lands, which could descend to her heirs, having, at most, only a lien thereon.

Under this view it becomes unnecessary to consider the additional grounds relied upon by respondents to sustain the Circuit decree.

It only remains to consider whether there was any error in refusing plaintiffs' motion to amend the complaint. Here, too, we agree with the Circuit Judge. This motion seems to have been made "at the hearing of the case," and, so far as appears, without notice to the other side. In the first place, it is, at least, doubtful whether the motion to amend did not come too late. It will be remembered that the case was re-

ferred to the master to hear and determine all the issues therein. At the first reference the demurrer was interposed, no motion to amend the complaint being then made. The master made his report, sustaining the demurrer, and the case came before the Circuit Judge upon the report and exceptions, amongst which there was none presenting the question of amendment. We are inclined to think that the only question before the Circuit Judge was whether any of the exceptions should be sustained, and if not, then the confirmation of the report followed, as a matter of course, and the case was at an end.

Besides, we think, as intimated by the Circuit Judge, that even if the amendments moved for had been allowed, the complaint would still have failed to state a cause of action. It would still have appeared to be a case in which the heirs at law of an insolvent ancestor were seeking to obtain the property of such ancestor as the fruits of an agreement fraudulent in law, and it would make no difference whether the creditors were one hundred or only one in number. The other amendment, by adding certain words at the end of paragraph seven of the complaint, besides making the allegations of that paragraph utterly inconsistent, would add nothing to the plaintiffs' cause of action. They were not creditors of the intestate, and this additional allegation would afford them no ground for setting aside a sale which they themselves brought about. Even if Mrs. Sally were still living, she, though a creditor, could not, with any propriety, have asked a Court of Equity to set aside a sale which she had brought about, and the fruits of which she enjoyed, as alleged in the seventh paragraph, and, certainly, the plaintiffs, as her heirs, could claim no higher rights than she could have done.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

A motion was presented in this case, praying a recall of the remittitur, so that a petition for rehearing might be presented and considered.

April 21, 1895. The following ruling was announced

PER CURIAM. This is a motion made by appellants for an

order recalling the remittitur, so that they may be enabled to present a petition for a rehearing of the cause by this court. The opinion was filed on March 21st in the office of the clerk of this court. On Monday, April 1, the clerk sent down the remittitur to the clerk of the Circuit Court. On Tuesday, April 2, application was made to the chief justice for an order staying the remittitur, and such an order was signed, the chief justice being under the impression that the opinion had been filed on March 22d, but stating to counsel at the time that it might be that the order was too late. Telegraphic notice of this order was received by the clerk on the same day, but this was one day after the remittitur had been actually sent down. It is thus manifest that the clerk committed no error in sending down the remittitur on Monday, April 1, the opinion having been filed on March 21st. There is no ground, therefore, for granting this motion to recall the remittitur.

But by reason of the earnestness of counsel and the importance of the case, we have carefully looked into the papers, and fully considered the grounds upon which the petition for rehearing is based, and we are satisfied that nothing is stated in the petition to warrant us in granting the petition even if it were properly before us. We, therefore, are satisfied that no harm has resulted to appellants by reason of the delay in obtaining order to stay remittitur. The motion must be refused.

Thereupon a formal order, dated April 17, 1895, was passed, refusing the motion.