16200

PENDARVIS v. BERRY

(52 S. E. (2d) 705)

*Messrs. McLain & Morris,* of Columbia, *for Appellant,*

Messrs. B. E. Nicholson, of Edgefield, *and J. W. Cox,* of Johnston, *for Respondent,*

Messrs. McLain & Morris, of Columbia, *for Appellant,* in reply.

March 23, 1949.

STUKES, Justice.

This action was brought in 1948 for an accounting and dissolution of a claimed partnership between appellant and respondent which was alleged to have been formed about July 1, 1945 for the operation of a retail liquor store in the town of Johnston.

The appeal is from the refusal by the lower court to sustain a demurrer to the third defense of the answer, which is, in substance, that plaintiff· (appellant) sold his Johnston liquor store to·defendant·(respondent) as of July·1, 1945 in order to operate a similar·store·in the·City of Columbia, for which latter appellant procured licenses from the State for

the fiscal years ending 1946 to 1948, inclusive; and that subsection (c) (9) of section 4 of The Alcoholic Beverage Control Act of 1945, 44 Stat. 337, 343, prohibits the ownership of any interest in, and operation of, any liquor business except the retail store which one operates under license, and thereby the partnership alleged in the complaint was illegal, contrary to public policy and unenforceable.

The cited section of the statute is as follows:

"No retail dealer shall own, operate or have any interest whatsoever in any business, store or establishment dealing in alcoholic liquors except the store or place of business covered by his retail dealer's license granted under this Act. No license shall be issued to more than one member of any household in this State and only one license shall be issued to any licensee."

The demurrer to the stated defense was overruled upon the conclusion that the alleged partnership contract contemplated a transaction which is forbidden by statute and therefore unenforceable, for which there were cited our decisions of *McConnell v. Kitchens,* 20 S. C. 430, 47 Am. Rep. 845, and *Grant v. Butt,* 198 S. C. 298, 17 S. E. (2d) 689.

There are two related decisions so recent that they had not been published at the time of the hearing of this case in the Circuit Court. They are *Ex parte* Rosenfeld (*In re* Langley's Estate), 214 S. C. 39, 51 S. E. (2d) 88, and *Romanus v. Biggs,* 214 S. C. 145, 51 S. E. (2d) 503, 507. They skirt the question here involved and it was said in *Romanus v. Biggs,* with reference to a similar alleged contravention of the Act of 1945 (enacted after the transactions there concerned) that: "It is argued that such a violation would be of a technical nature, not involving public morals or public policy, which could at most result only in the revocation of the wholesale license. We find it unnecessary to pass upon this contention." That issue, in substance, is presented by this appeal.

The excellent brief of appellant is principally upon the contention that in view of the fact that the Act of 1945 contains no declaration that a contract in evasion of its terms is void and unenforceable and the Act is not designed to protect the public health and morals or to protect the public from imposition and fraud, a contract of evasion is not void but is enforceable in such a case as this.

By means of the foregoing contended distinction, the authorities relied upon by the lower court are differentiated by appellant. It is said that *McConnell v. Kitchens* resulted as it did because the pertinent statute there (requiring the labelling of fertilizer) was for the protection of the public from fraud and the defendant who invoked it was a person (farmer) specially entitled to its protection. It is argued that the authority of that decision is restricted by the subsequent case of opposite result, *Tate v. Pegues*, 28 S. C., 463, 6 S. E. 298, for the reason that the defendant there was not entitled to invoke the statute (the same involved in *McConnell v. Kitchens*) because it was not designed for his protection but for the protection of a farmer, which the defendant was in *McConnell v. Kitchens*. *Grant v. Butt,* the other authority cited by the lower court, is distinguished by appellant upon the contention that it was obviously decided purely on grounds of public policy. The facts of it were so flagrantly violative of basic public policy and so foreign to the facts of the instant case that it belongs to a class apart from the latter and need not be further considered. However, the real distinction between the *McConnell* and *Tate cases* (and the interesting old cases referred to in the quotation which follows) is that in the latter the action was not upon an illegal contract (as here) but upon assumpsit for money had and received by an agent for his principal. It is stated in the following brief excerpt from the opinion by Chief Justice McIver in *Gist v. Western Union Telegraph Co.,* 45 S. C. 344, 23 S. E. 143, 153, 55 Am. St. Rep. 763: "Indeed, the true theory in such cases is that the illegal business out of which the money received by the agent arises is no part of the cause

of action, and is not necessarily connected therewith; the real cause of action being money had and received by the agent for the use of his principal. This is a principle upon which the cases of *Andersons v. Moncrieff,* 3 Desaus. [124], 125 and *Owen v. Davis,* 1 Bailey 315, cited in support of the decision in *Tate v. Pegues, supra,* rest".

*Elder Harrison Co. v. Jervey,* 97 S. C. 185, 81 S. E. 501, confirmed the rule just stated.

A further obstacle to appellant's attempted distinction is that it overlooks or ignores the consideration that the Alcoholic Beverage Control Act of 1945 is a typical exercise of the police power of the State and is designed for the protection of the morals and welfare of the public. The universality of this conception of legislation looking to control of the liquor traffic was pointed out in *Davis v. Query,* 209 S. C. 41, 39 S. E. (2d) 117. It cannot be gainsaid that, while the Act of 1945 is also a revenue law, its principal purpose is the protection of the public health and morals. Liquor control legislation is generally of such purpose. Absence of this important feature influenced the decision of the leading case of *Fairly v. Wappoo Mills,* 44 S. C. 227, 22 S. E. 108, 29 L. R. A. 215. Annotations, cited by appellant, 30 A. L. R. 834, 42 A. L. R. 1226 and 118 A. L. R. 646. *Fairly v. Wappoo Mills* and the other cases contained in the foregoing annotations refer to the enforceability or unenforceability of contracts made by persons who had not procured licenses to do business. The case in hand is of course stronger against enforceability because the statute here forbids the contract, licenses it in no event and even provides penalties for doing the act which the alleged partnership contract contemplated. Sec. 9(b) prescribes forfeiture of the bond of a licensed dealer for any violation of the Act and Sec. 14(i) (2) is as follows: "For each violation of any other provision of this Act, except where a different punishment is expressly provided, a fine or imprisonment in the discretion of the Court of General Sessions."

Earlier cases than the most of those in the foregoing A. L. R. annotations are collected in the note in 7 L. Ed. 825, Contracts Void as against Public Policy or as Illegal. There are numerous citations to support the generalization that a contract made in consideration of an act forbidden by law is void. In the case in hand a contract of partnership is alleged by one who the answer says was barred by his license as a liquor dealer from having any proprietary interest in the partnership, under the terms of the Act which is invoked. Appellant's right to maintain the action depends upon a contract which is forbidden by law and is, therefore, void under the conclusion of the L. Ed. annotator, *supra.*

We are constrained to hold the principle applicable to this case. It would be anomalous, as many courts have said in the past, to permit judicial enforcement of contracts which are entered into in violation of law. As was said in *Gilliland v. Phillips,* 1 S. C. 152: "Men may enter into any agreements they please and, as between themselves, may either respect or disregard them. When, however, they are submitted to the courts for adjudication, they must be tested and governed by the law;" and in *Bank of United States v. Owens,* 2 Pet., U. S., 527, 539, 7 L. Ed. 508, quoted in *McConnell v. Kitchens, supra,* 20 S. C. at page 439, 47 Am. Rep. 845: "No court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country, how can they, then, become auxiliary to the consummation of violations of the law? * * * There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal."

If the complaint be true and respondent make out his defense he may be unjustly enriched, as appellant says, but the answer is old and sound and is here restated from another opinion of Chief Justice McIver, that in *Milhous v. Sally,* 43 S. C. 318, 21 S. E. 268, 270, 885, 49 Am. St. Rep. 834: "As is said by Ld. Mansfield in *Holman v. Johnson,*

1 Cowp., 341: 'The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times, very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in a general principle of policy, which the defendant has the advantage of, contrary to real justice as between him and the plaintiff; by accident, if I may so say. The principle of public policy is this: *"ex dolo malo non oritur actio."* No court will lend its aid to a man who founds his cause of action upon an immoral or illegal act.' And as is said by Dixon, C. J., in *Clemens v. Clemens,* 28 Wis. 637, at page 654, [9 Am. Rep. 520, at page 531], after making the above quotation from Lord Mansfield: 'The principle or policy of the law, therefore, is to reject the suit of and reprove the plaintiff for his wrong, not to reward the defendant. The plaintiff must be punished, even though it be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself. * * * The suit of the party compelled to seek the aid of the courts, in order to obtain the fruits of his own fraud or wrong must be dismissed, although it may result in unjustly giving to the other equally culpable party the entire benefit of them.' "

We conclude, therefore, as did the lower court, that the challenged defense is a valid one if established by the evidence.

Affirmed.

BAKER, C. J., and FISHBURNE, TAYLOR and OXNER, JJ., concur.