722 S.E.2d 213

ATLANTIC COAST BUILDERS AND CONTRACTORS, LLC, Respondent,

v.

Laura LEWIS, Petitioner.

No. 27044.

Supreme Court of South Carolina.

Heard Jan. 7, 2011.
Decided Sept. 26, 2011.

Hemphill P. Pride, II, of Columbia, for Petitioner.

John P. Qualey, Jr. and Thomas Calvin Taylor, both of Hilton Head Island, for Respondent.

Justice PLEICONES.

Respondent brought an action against petitioner for negligent misrepresentation, unjust enrichment, and breach of contract. The master-in-equity awarded respondent $10,160.79 in damages. The Court of Appeals affirmed. *Atlantic Coast Builders and Contractors v. Lewis,* Op. No.2009–UP–042 (S.C. Ct.App. filed Jan. 15, 2009). This Court granted certiorari to review the Court of Appeals' decision. We affirm.

## FACTS

On March 28, 2003, petitioner, acting through a leasing agent, entered into a commercial lease whereby respondent would lease from petitioner property located at 165 Fording Island Road in Beaufort County. The lease provided respondent would lease the property for twelve months at a monthly rate of $3,500. The lease provided in pertinent part:

2. Use. Lessee shall use and occupy the premises for Building & Const. office. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such purpose.

. . .

5. Ordinances and Statutes. Lessee shall comply with all statutes, ordinances and requirements of all municipal, state

and federal authorities now in force, or which may hereafter be in force, pertaining to the premises, occasioned by or affecting the use thereof by Lessee.

Although petitioner represented in the lease that the property could lawfully be used for a building and construction office, the property was zoned "rural," meaning virtually all commercial uses were prohibited.

Upon executing the lease agreement, respondent paid petitioner a $3,500 security deposit. Subsequently, respondent occupied the property and made numerous alterations to it. Respondent repaired the ceiling and interior walls, replaced the flooring and electrical wiring, pressure washed the exterior, and installed a telephone system. Respondent made rental payments for April and May 2003.

On May 28, 2003, a Beaufort County zoning official served respondent with notice and warning of two violations for respondent's failure to obtain a certificate of zoning compliance before occupying the premises and its failure to obtain a sign permit before erecting a sign. Respondent vacated the property, relocated its business, and ceased making rental payments.

Respondent instituted this action against petitioner, alleging negligent misrepresentation, unjust enrichment, breach of contract, and breach of the covenant of quiet enjoyment. Petitioner denied these allegations and made a counterclaim for breach of contract. The master in equity entered judgment in favor of respondent.

I. *Did the Court of Appeals err in affirming the master-in-equity's judgment in favor of respondent?*

█ Petitioner argues the Court of Appeals erred in affirming the master's judgment in favor of respondent on its claims of negligent misrepresentation and breach of contract, and in denying petitioner relief on her counterclaim for breach of contract. We find petitioner's arguments are unreviewable.

█ "Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case." *Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) (citing *Anderson v. Short*, 323 S.C. 522, 525, 476 S.E.2d 475, 477 (1996)).

On appeal to the Court of Appeals, petitioner argued the master erred in granting judgment in favor of respondent for negligent misrepresentation and breach of contract. The Court of Appeals affirmed the master pursuant to Rule 220(b), SCACR, finding the master properly granted judgment in favor of respondent.

Petitioner did not appeal all grounds on which the master's judgment was based. Namely, she did not challenge the determination that respondent was entitled to recover based on unjust enrichment. Thus, under the two-issue rule, the Court of Appeals should have declined to address the merits of petitioner's argument since petitioner failed to challenge all three grounds on which the master's judgment was based.[1] *See Jones v. Lott,* 387 S.C. 339, 692 S.E.2d 900 (2010) ("Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case."). Accordingly, we affirm the decision of the Court of Appeals.

II. *Security Deposit*

■  Petitioner argues the Court of Appeals erred in holding the issue of the security deposit was not preserved. We disagree.

In his initial order, the master failed to address the return of the security deposit, which respondent had sought to be

---

1. The dissent concludes it was unnecessary for petitioner to argue unjust enrichment on appeal because the master did not award damages for unjust enrichment. While the dissent correctly notes the proper measure of damages for unjust enrichment is the amount of increase in the fair market value of the subject property after improvements, the conclusion that the master did not award damages for unjust enrichment is purely speculative. In fact, the master states, albeit incorrectly, in his order that the measure of damages for unjust enrichment "would be the amount by [which] the defendant was unjustly enriched." Although this is the incorrect measure, one which petitioner has never challenged, the fact that the master explicitly outlines the measure of damages for unjust enrichment suggests he did in fact award damages based on this theory. The two-issue rule applies where, as here, it is unclear upon which of the multiple theories the judgment below is based, and the petitioner does not challenge all possible theories.

returned from petitioner. Although petitioner filed a Rule 59(e), SCRCP, motion to reconsider the master's initial order, it did not address the issue of the security deposit. Shortly thereafter, respondent filed a Rule 59(e) motion specifically asking the master to consider this issue. Petitioner did not file anything in response to this motion, and never argued to the master that she should retain the security deposit. In its Amended Order, the master found respondent was also entitled to the security deposit, in addition to the damages already awarded.

On appeal, petitioner argued the master erred in awarding respondent the security deposit. The Court of Appeals found the issue was not preserved for appeal.

Because petitioner never argued until direct appeal that she should retain the security deposit, we find the Court of Appeals properly held the issue was not preserved for appeal.[2] *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779–80 (2004) ("Issues and arguments are preserved for

2. The dissent would find the issue of the security deposit preserved because petitioner argued at trial she should not be required to return the security deposit because respondent stopped making rent payments in May 2003, but continued to occupy the premises through July 2003, preventing petitioner from renting the property to someone else. Although this argument was raised to the Court of Appeals and to this Court, a close review of the record shows this argument was never made to the master in equity. Further, petitioner's general denial in her Answer that she should return the security deposit is not sufficient to preserve the specific arguments raised to the Court of Appeals.

The dissent also finds this issue preserved because the master ruled on it after respondent raised the issue in a Rule 59(e) motion. This was not sufficient to preserve the issue because petitioner failed to advance to the master the arguments she raised to the Court of Appeals. *See McCall v. State Farm Mut. Auto. Ins. Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004) (an appellant cannot raise an issue on appeal that was raised by the respondent at trial, but on which appellant advanced no arguments to the trial court; the argument must have been raised by appellant in order for appellant to raise it on appeal).

The dissent suggests finding this issue unpreserved constitutes "an overzealous application of appellate preservation rules." This observation fails to recognize, however, the importance of our preservation requirements:

Imposing this preservation requirement on the appellant is meant to enable the lower court to rule properly after it has considered all relevant facts, law, and arguments. (Citation omitted). The requirement also serves as a keen incentive for a party to prepare a case

appellate review only when they are raised to and ruled on by the lower court."). Accordingly, we hold the Court of Appeals properly found the issue was not preserved for review.

## CONCLUSION

Because petitioner did not appeal the master's finding of unjust enrichment, and the Court of Appeals properly found the issue of the security deposit was not preserved for appeal, the decision of the Court of Appeals is

**AFFIRMED.**[3]

Acting Justice G. THOMAS COOPER, JR., concurs. HEARN, J., concurring in part and dissenting in part in a separate opinion in which KITTREDGE, J., concurs. TOAL, C.J., dissenting in a separate opinion.

---

thoroughly. It prevents a party from keeping an ace card up his sleeve—intentionally or by chance—in the hope that an appellate court will accept that ace card and, via a reversal, give him another opportunity to prove his case.

*I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000).

Moreover, it is unclear why the dissent focuses such a substantial portion of its discussion on the preservation of petitioner's arguments when it ultimately states it would reverse the master not based on the arguments forwarded by petitioner, but for a reason not advanced by either party.

**3.** The dissent would vacate the master's order and dismiss the case because it finds the lease agreement constituted an illegal contract, requiring us to leave the parties as we found them. We disagree with this conclusion. It is true some courts have taken the position that a lease of premises for a use conclusively prohibited by a zoning regulation is unenforceable because of either the illegality of the purpose itself or the frustration of purpose resulting from the regulation's existence. *See* 37 A.L.R.3d 1018, § 2[a] (1971). It is only logical that a court would not enforce a lease of this type, as doing so would require the tenant to violate a zoning ordinance. This does not mean, however, the parties should be "left as they are found," entitled to no relief. A lease under which the contemplated purpose violates a zoning regulation is far different than a situation where two parties intentionally contract to do an act prohibited by statute, or which is contrary to public policy. Further, in instances such as this, where a lease contains a provision warranting the use of the premises for the contemplated purpose, courts have held a tenant may be entitled to damages for breach of warranty where the contemplated use is prohibited by a zoning regulation. 37 A.L.R.3d 1018, § 2[a].

Justice HEARN.

Respectfully, I concur in part and dissent in part. I agree with the majority that the two-issue rule precludes our review of the master-in-equity's entry of judgment against Laura Lewis on Atlantic Coast Builder's (Atlantic) claims for negligent misrepresentation and breach of contract. However, I do not believe our error preservation rules prevent us from considering whether Lewis was entitled to retain Atlantic's security deposit and would reach the merits of that issue.

Atlantic sued Lewis for negligent misrepresentation, breach of contract, and unjust enrichment after Atlantic learned it could not use the premises it leased from Lewis for business purposes, despite the statement in the lease to the contrary. Atlantic learned of this in late May, two months into the one-year lease, and stopped paying rent. However, it remained on the premises through at least July. The master found for Atlantic on all causes of action,[4] awarding Atlantic $6,660.79 in damages, representing the expenditures Atlantic made to improve the premises and specifically excluding those improvements the master did not believe unjustly enriched Lewis. Cross motions for reconsideration under Rule 59(e), SCRCP, were filed. In particular, Atlantic moved for the master to include its security deposit of $3,500, which Lewis never returned, in the calculation of damages. Lewis did not respond to this motion, and the court modified its award to include this amount. On appeal, Lewis argues the master erred in entering judgment against her for negligent misrepresentation and breach of contract. She further argues the master erred in ordering she return Atlantic's security deposit.

---

4. Lewis also counterclaimed for breach of contract and sought to recover the balance of rent payments due under the lease. The master denied this claim because it found Lewis's misrepresentation as to the use of the premises rendered the lease unenforceable. The majority does not reach the issue of Lewis's counterclaim, and I decline to do so as well. In my opinion, Lewis has abandoned this issue as her brief devotes only one page to it that is purely a recitation of facts, devoid of any citation to legal authority, with the summary conclusion that Atlantic breached the lease. *See* Rule 208(b)(1)(D), SCACR; *First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (finding the failure to provide arguments or cite to authority in support of argument constitutes abandonment of issue on appeal).

Initially, I share the Chief Justice's concern regarding an "over-zealous application" of our long-standing error preservation rules. However, error preservation has been a critical part of appellate practice in this State for a long time, serving to ensure, as noted by the Chief Justice, that we do not reach issues which were not ruled upon by the trial court. Thus, I agree with the Chief Justice that we are not precluded from finding an issue unpreserved even when the parties themselves do not argue error preservation to us. A rule which would permit such an "appeal by consent" is contrary to the very core of our preservation requirement: "Issue preservation rules are designed to give the trial court a fair opportunity to rule on the issues, and thus provide us with a platform for meaningful appellate review." *Queen's Grant II Horizontal Prop. Regime v. Greenwood Dev. Corp.*, 368 S.C. 342, 373, 628 S.E.2d 902, 919 (Ct.App.2006). These rules, however, must also be applied consistently. If our review of the record establishes that an issue is not preserved, then we cannot reach it regardless of the status of the party raising it. This is not a "gotcha" game aimed at embarrassing attorneys or harming litigants, but rather an adherence to settled principles that serve an important function. Surely it is good practice for us to reach the merits of an issue when error preservation is doubtful, but when an issue is clearly unpreserved, we should follow our longstanding precedent and resolve the issue on error preservation grounds.

The master found for Atlantic on all three causes of action: negligent misrepresentation, breach of contract, and unjust enrichment. However, Lewis appealed only the finding of liability for negligent misrepresentation and breach of contract, not unjust enrichment. Accordingly, there is a finding of liability from which no appeal was taken, and our consideration of Lewis's arguments that the master erred in entering a judgment against her is barred by the two-issue rule. *See Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) ("Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become law of the case.").

The thrust of the Chief Justice's argument against the application of this rule is that the master's order does not

award damages for unjust enrichment, correctly noting that the actual expenditures made by Atlantic are not a proper measure for unjust enrichment. *See Barrett v. Miller*, 283 S.C. 262, 264, 321 S.E.2d 198, 199 (Ct.App.1984) (finding a party could not be unjustly enriched with improvements to real property by more than the increase in the property's fair market value). However, an unappealed ruling, right or wrong, is the law of the case. *Buckner v. Preferred Mut. Ins. Co.*, 255 S.C. 159, 160–61, 177 S.E.2d 544, 544 (1970). From my review of the record, the master intended to award damages for all causes of action, including unjust enrichment. In fact, he went so far as to specifically state he was excluding certain expenditures from his award because they did not unjustly enrich Lewis. Therefore, as the case currently stands before us, the master awarded damages to Atlantic based on a theory of unjust enrichment. And because the master made an alternate finding of liability that Lewis did not appeal, the two-issue rule bars us from considering Lewis's arguments regarding negligent misrepresentation and breach of contract. Unlike the Chief Justice, I do not believe the existence of this procedural bar is questionable and would place no weight on the fact that neither the parties nor the court of appeals raised it.

On the other hand, I agree with the Chief Justice that the precise issue of whether Lewis is entitled to retain Atlantic's security deposit is preserved for review. The majority declines to reach the merits of this issue because it believes the issue was not raised at trial; Lewis failed to raise it in a Rule 59(e), SCRCP, motion; and Lewis did not argue against Atlantic's Rule 59(e) motion. In its complaint, Atlantic requested a return of the security deposit, which Lewis denied in her answer. Furthermore, and more importantly, Lewis's property manager testified Lewis kept the security deposit because Atlantic remained on the property for two months after it breached the lease by failing to pay rent. When the master failed to rule on Lewis's entitlement to the security deposit, it was necessary for Atlantic to make a motion under Rule 59(e) as the issue had been fully raised at trial yet not ruled upon. Indeed, had it not been raised at trial, the question before us most certainly would be whether it was even proper for Atlantic to make the motion in the first place. Lewis herself

was under no obligation to make a similar motion regarding the security deposit; it would be a cruel twist of our preservation rules to require a losing party to request the judge to consider additional damages he forgot to award.

It is also of no consequence that Lewis did not respond to Atlantic's motion. Distilled to its basics, issue preservation requires that an issue be raised to and ruled upon by the trial judge. *Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). So long as these two elements are met, an issue will be deemed preserved. Rule 59(e) motions fill a special niche in our preservation rules to ensure issues raised to but *not* ruled upon by the trial judge can be reviewed on appeal. *I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 422, 526 S.E.2d 716, 724 (2000). They are not a vehicle through which a party can inject new issues for the court to pass on, and they similarly are not a way to get new arguments in through the back door. *See Hickman v. Hickman,* 301 S.C. 455, 456, 392 S.E.2d 481, 482 (Ct.App.1990). Here, the parties raised the issue of the security deposit to the master; because the master candidly admitted he just forgot to address it, it was therefore incumbent upon Atlantic to file a post-trial motion. The master then considered the arguments raised during the trial regarding Lewis's entitlement to the security deposit and ruled accordingly. The issue was thus raised to and ruled upon by the trial judge. Requiring Lewis to respond to the motion would be fruitless in these circumstances. Our cardinal error preservation requirements have been met, and I know of nothing in our rules or precedents that would require Lewis to specifically respond to Atlantic's motion or be forever barred from contesting Atlantic's entitlement to the security deposit.

In my opinion, the majority erroneously relies on *McCall v. State Farm Mutual Automobile Insurance Co.,* 359 S.C. 372, 597 S.E.2d 181 (Ct.App.2004), for the proposition that Lewis's failure to respond bars her argument to us. In *McCall,* the defendant raised the door-closing statute as a defense at the summary judgment stage. *Id.* at 381, 597 S.E.2d at 186. The plaintiff, however, did not address the defendant's arguments, *id.,* and the circuit court dismissed her complaint, *id.* at 375, 597 S.E.2d at 185. The court of appeals therefore held the plaintiff could not challenge the application of the door-closing

statute on appeal because the circuit court did not consider "all relevant facts, law, and arguments," rendering the issue unpreserved. *Id.* at 381–82, 597 S.E.2d at 186. The crucial distinction between *McCall* and the case before us today is that the plaintiff in *McCall* completely failed to advance her arguments below. Therefore, the plaintiff would have been raising arguments on appeal that were not made to the circuit court. Here, Lewis is not raising a different argument on appeal. In fact, had she responded to Atlantic's motion, her arguments at that procedural juncture could have only mirrored the argument she made at trial because new or different arguments are not countenanced at the Rule 59(e) stage. It is enough that the master heard her arguments during the trial and was able to rule accordingly, regardless of whether that ruling was in her favor.[5] *See Eubank v. Eubank,* 347 S.C. 367, 373 n. 2, 555 S.E.2d 413, 416 n. 2 (Ct.App.2001) ("The 'raised to and ruled on' rule of error preservation requires only a ruling, not necessarily a favorable one."). Although Lewis is bound on appeal to the arguments she raised during the trial, thus ensuring she cannot keep an ace card up her sleeve, the issue nevertheless is preserved. While it is advisable to respond to Rule 59(e) motions, it is not required in these situations.

As to the merits of this issue, the lease provides the security deposit is "security for the performance of [Atlantic]'s obligations under this lease, including without limitation the surrender of possession to [Lewis] as herein provided." The lease also states that upon Atlantic's failure to pay rent and cure the breach after receiving notice, Atlantic must surrender possession of the premises. Because it failed to do so, Lewis's property manager testified Lewis kept the security deposit, precisely as the lease permitted her to do. The master found Lewis would be unjustly enriched if she kept the security deposit, but I cannot find any evidence to support this finding. While Lewis may have been unjustly enriched by receiving the

---

**5.** This case is therefore different from one where the issue raised in the Rule 59(e) motion was one *not* raised to the court during the trial, and the appellant still failed to respond. That situation is more akin to *McCall* in that the record contains no opposition to the basic premise underlying the motion. As in *McCall,* permitting the appellant to challenge the motion on appeal would be to permit him to argue a ground that was not argued below.

benefits of the improvements Atlantic made to the premises, nothing suggests she was similarly unjustly enriched when she kept the security deposit she was wholly entitled to under the lease after Atlantic remained on the property for two months without paying rent. The same is true for Atlantic's claims of negligent misrepresentation and breach of contract; it lost the security deposit not because of any statements Lewis made or her alleged breach of the lease, but rather because it failed to surrender possession and stayed on the premises without paying rent.

Therefore, I would affirm the master's entry of judgment for Atlantic based on the two-issue rule. However, I would reduce Atlantic's award by $3,500 and permit Lewis to keep the security deposit.[6]

KITTREDGE, J., concurs.

Chief Justice TOAL.

I take issue with the majority's disposal of this case on issue preservation grounds. For reasons set forth below, I do not believe the "two-issue" rule precludes this Court from deciding whether the master-in-equity's (master) award of improvement costs was valid. Also, I fervently disagree with the majority's contention that an issue argued by each party and

---

6.  I express no opinion regarding whether Atlantic's lease was an illegal contract. That issue was never raised to the master, the court of appeals, or this Court, and we therefore should not address it. Moreover, I part company with the Chief Justice's view that we may reach this issue because we sit to correct errors of law and the legality of the lease was fairly embraced in the arguments raised on appeal. Lewis's statement of issues on appeal does not mention the illegality of the lease and reads as follows:

    1.  Did the Court of Appeals err in affirming the trial court's grant of judgment against the defendant and the trial court's denial of the defendant's counterclaim?
    2.  Did the Court of Appeals err in affirming the trial court's judgment awarding the plaintiff the security deposit?

    Additionally, Lewis's arguments concern only which party breached the lease and the representations contained therein. Although it is axiomatic that we sit to correct errors of law, that broad maxim does not trump the longstanding requirement that any error of law we correct must first be argued to us and supported by authority. Accordingly, I would not reach the issue of the legality of the lease. See Rule 208(b), SCACR.

then ruled upon by the trial court, after the submission of a 59(e) motion, is nevertheless unpreserved. On the merits, I would vacate and dismiss.

In my opinion, an over-zealous application of appellate preservation rules denigrates the primary purpose of the judiciary, which is to serve the citizens and the business community of this state by settling disputes and promoting justice. To be clear, I do not discount the importance of our issue preservation rules. As an appellate court, we sit to review decisions of lower courts for error. As such, "it is axiomatic that an issue cannot be raised for the first time on appeal." *Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998). However, I do not believe it is our place to scour the records before us for the purpose of avoiding issues or, even worse, to play a "gotcha" game with attorneys by showcasing their alleged mistakes, at the expense of their clients. This practice ignores the fact that behind every party name on a caption is a life-blood litigant or criminal defendant that depends on the court system to protect their economic and liberty interests. In light of my view, I believe that where the question of preservation is subject to multiple interpretations, any doubt should be resolved in favor of preservation. When the opposing party does not raise a preservation issue on appeal, courts are not precluded from finding the issue unpreserved if the error is clear. However, the silence of an adversary should serve as an indicator to the court of the obscurity of the purported procedural flaw.

The majority determined not to reach the merits of Lewis's first issue on appeal by invoking the "two-issue" rule. The master found Atlantic proved its claims of unjust enrichment, negligent misrepresentation, and breach of contract. However, the master based the award of $6,660.79 only on Atlantic's actual pecuniary loss, which is the appropriate measure of damages for negligent misrepresentation and breach of contract. *See Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 240, 692 S.E.2d 499, 508 (2010) (plaintiff must prove amount of pecuniary loss suffered as result of negligent misrepresentation); *Bensch v. Davidson*, 354 S.C. 173, 178, 580 S.E.2d 128, 130 (2003) (measure of damages for breach of contract is loss actually suffered by contractee as a result of breach). The proper measure of damages for an unjust

enrichment claim is the amount of increase in the fair market value of the subject property due to the improvements made by the plaintiff. *See Stringer Oil Co., Inc. v. Bobo*, 320 S.C. 369, 372–73, 465 S.E.2d 366, 368–69 (Ct.App.1995) (finding the appropriate measure of owner's unjust enrichment was value of improvements to owner rather than the cost to the person producing the result). Thus, the focus of an unjust enrichment award is on the amount the owner is enriched, not the amount of actual loss to the plaintiff. The record contains no evidence that the value of the subject property increased as a result of improvements made by Atlantic, and the master based damages only on the improvement costs expended by Atlantic. Lewis broadly requested both the court of appeals and this Court to reverse the master's award of damages. Therefore, it was unnecessary for Lewis to argue unjust enrichment on appeal because it had no bearing on the award of damages that Lewis prayed to have reversed. The "two-issue" rule was spotted by neither the court of appeals nor Atlantic. In my opinion, the existence of this preservation bar is questionable, and I elect to resolve that question in favor of preservation.

The majority additionally found Lewis failed to preserve the security deposit issue because she did not file a response to Atlantic's 59(e) motion asking the master to increase the amount of judgment to include the $3,500 security deposit. The majority appears to have misconstrued the instances when a party is required to file a post-trial motion to preserve an issue for appellate review and when such filings are merely optional. The following language is instructive:

A party *may* wish to file [a 59(e) ] motion when she believes the court has misunderstood, failed to fully consider, or perhaps failed to rule on an argument or issue, and the party wishes for the court to reconsider or rule on it. A party *must* file such a motion when an issue or argument has been raised, but not ruled on, in order to preserve it for appellate review.

*Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 24, 602 S.E.2d 772, 780 (2004) (emphasis in original).

In this case, the sum total of relief requested by Atlantic in its Complaint included the $3,500 security deposit, and Lewis

denied liability for these damages in her Answer. At trial, Lewis argued she should not be required to return the security deposit because Atlantic stopped making rent payments in May 2003, but continued to occupy the premises through July 2003, which prevented Lewis from listing the property for rent.[7] The master amended his initial order to include the award of the security deposit after Atlantic filed a 59(e) motion requesting it. Thus, the issue of the security deposit was raised to the master, Lewis argued she was entitled to retain the security deposit at trial, and the master ruled upon that issue in his amended order. This is what our preservation rules require, and I fail to see why the award of the security deposit is unreviewable.

On the merits, I believe the court of appeals erred in affirming the master's award of damages for Atlantic—an award based on principles of both law and equity. In my opinion, this lease was an illegal contract and, therefore, void and unenforceable. As such, the parties were not entitled to relief under any legal theory, and the Court is constrained to leave the parties as we found them.

The lease agreed to by Lewis and Atlantic was entitled "Commercial Lease." The second clause of the lease states:

---

7. The majority writes that Lewis did not preserve the security deposit issue because "a close review of the record shows this argument was never made to the master in equity." This is not correct. The trial record before the master contains the following:

[Atlantic's counsel]: When did you send the notice of default to the Plaintiff regarding the alleged breaches of the lease?
[Lewis's property manager]: ... I wanted to know if since they had been apprised that they needed to move when they were going to leave the building since they hadn't paid rent, they were still there we couldn't rent it to anybody else and they hadn't paid rent. They were still there in July.
. . . .
Q: You said you did not return the security deposit, where is that—where are those funds now?
A: The security deposit? Well[,] they were in arrears with the rent, the security deposit went to the owner.
The lease agreement provided that the security deposit served as "security for the performance of the Lessee's obligations under this lease, including without limitation the surrender of possession of the premises to Lessor. . . ." Lewis clearly made the argument that, because Atlantic defaulted by remaining at the premises without paying rent, Lewis was entitled to apply the security deposit to cure that default. Thus, this issue was fully vented at trial.

"Lessee shall use and occupy the premises for Building and Constr. Office. The premises shall be used for no other purpose. Lessor represents that the premises may lawfully be used for such a purpose." In fact, the premises was not zoned for use as a commercial office, and therefore, the lease had no lawful purpose. It is no excuse the parties were unaware of the applicable zoning laws because "citizens are presumed to know the law and are charged with exercising 'reasonable care to protect their interests.' " *Ahrens v. State of S.C.*, 392 S.C. 340, 355, 709 S.E.2d 54, 61 (2011) (*quoting Morgan v. S.C. Budget & Control Bd.*, 377 S.C. 313, 320, 659 S.E.2d 263, 267 (Ct.App.2008)); *see also Quail Hill, LLC v. County of Richland*, 387 S.C. 223, 241, 692 S.E.2d 499, 509 (2010) (party not justified in relying on an incorrect statement from a zoning official because party could have referenced the Official Zoning Map to ascertain the correct zoning classification).

It is a well-settled principle of contract law that "a contract to do an act which is prohibited by statute, or which is contrary to public policy, is void, and cannot be enforced in a court of justice." *McConnell v. Kitchens*, 20 S.C. 430, 437–38 (1884); *see also Pendarvis v. Berry*, 214 S.C. 363, 369, 52 S.E.2d 705, 707 (1949) (" 'Men may enter into any agreements they please and, as between themselves, may either respect or disregard them. When, however, they are submitted to the courts for adjudication, they must be tested and governed by the law.' ") (*quoting Gilliland v. Phillips*, 1 S.C. 152 (1869)). This Court has never addressed the validity of a lease such as this one. However, I believe where the only contemplated use of a lease is for a purpose prohibited by the applicable zoning regulations, the lease is illegal and wholly unenforceable. *See Cent. States Health & Life Co. of Omaha v. Miracle Hills Ltd. P'ship*, 235 Neb. 592, 456 N.W.2d 474 (1990) (a lease restricting use to a single purpose is unenforceable and relieves the parties of all obligations thereunder). As such, the parties must be left as the court found them. *See* 17A C.J.S *Contracts* § 362 (2011) ("As a general rule, both at law and in equity, a court will not aid either party to an illegal contract ... but leaves the parties where it finds them.").

The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way

towards carrying out the terms of an illegal contract. In case any action is brought which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, *nor will they enforce any alleged rights directly springing from such contract.*

*Jackson v. Bi–Lo Stores, Inc.,* 313 S.C. 272, 276, 437 S.E.2d 168, 170 (Ct.App.1993) (*quoting McMullen v. Hoffman,* 174 U.S. 639, 654, 19 S.Ct. 839, 43 L.Ed. 1117 (1899) (emphasis in original)). The refusal of the courts to entertain litigation based upon an illegal contract can, at times, lead to inequitable results. However, as stated by Lord Mansfield in the landmark case of *Holman v. Johnson,* the illegality doctrine

is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this; *ex dolo malo non oritur action* (out of fraud no action arises). No Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act.... It is upon that ground the Court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring his action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis* (better is the condition of the defendant, than that of the plaintiff).

*Holman* (1775) 98 Eng. Rep. 1120, 1121.

Accordingly, in my opinion, Atlantic is not entitled to recover damages in tort, contract, or in equity; and similarly, Lewis cannot recover her counterclaim for attorney's fees and other associated costs. Leaving the parties as they were when litigation ensued, we will not compel Lewis to reimburse Atlantic for its improvement costs or return the security deposit.[8] I would vacate and dismiss.

---

8. Justice Hearn's separate opinion asserts this Court cannot determine *sua sponte* that the contract under which both parties seek relief is illegal. I disagree. Although it is axiomatic that a court may only decide the issues before it, a court is not constrained to decide a case only according to the theories propounded by the parties. To the contrary, an appellate court always has the authority to correct errors of law. *See, e.g., City of Cayce v. Norfolk Southern Ry. Co.,* 391 S.C. 395,

706 S.E.2d 6 (2011) (an appellate court's scope of review is limited to correcting the circuit court's order for errors of law). Each party has asked this Court to interpret the lease agreement, and in my opinion, we cannot enforce a contract whose sole purpose is illegal.