688 S.E.2d 125

**Teresa EDWARDS, Appellant**

v.

**LEXINGTON COUNTY SHERIFF'S DEPARTMENT**
and County of Lexington, Respondents.

No. 26758.

Supreme Court of South Carolina.

Heard Oct. 7, 2009.
Decided Jan. 11, 2010.

286

Frederick Arnold Beacham, Jr., of Lexington, and John O'Leary, of O'Leary and Associates, of Columbia, for Appellant.

Patrick J. Frawley, of Nicholson, Davis, Frawley, Anderson & Ayer, of Lexington, for Respondents.

Justice KITTREDGE.

■ Appellant Teresa Edwards, a domestic violence victim, sued the Lexington County Sheriff's Department and the County of Lexington (collectively, Respondents)[1] after she

---

1. Respondents filed a joint answer to the complaint asserting that the Lexington County Sheriff's Department and Lexington County were "one and the same entity." However, under South Carolina law, the sheriff and sheriff's deputies are State, not county, employees. *See Cone v. Nettles*, 308 S.C. 109, 112, 417 S.E.2d 523, 524 (1992); *Heath v. Aiken County*, 295 S.C. 416, 418, 368 S.E.2d 904, 905 (1988). Although Respondents' assertion is inconsistent with settled law, their position

was attacked by her ex-boyfriend, Allen Baker, in a magistrate's court bond revocation hearing where no security was provided. The bond revocation hearing was scheduled at the request of an employee of the Lexington County Sheriff's Department who was aware of Baker's multiple bond violations and his continuing threats against Edwards. The trial court ruled Respondents owed no duty to Edwards and granted Respondents' motion for summary judgment. Because we conclude Respondents owed a common law duty to Edwards, we reverse and remand.

## I.

Teresa Edwards and Allen Baker were dating in February 2003 when the Lexington County Sheriff's Department (the sheriff's office) responded to a domestic violence call at Edwards' home.[2] Baker was arrested for criminal domestic violence. Baker was released on a personal recognizance bond and ordered not to contact Edwards.

On April 25, 26, and 27, Edwards called the sheriff's office to report that Baker was threatening her and her children. On April 28, the sheriff's office arranged for Edwards and her daughters to stay in a hotel for protection and obtained a warrant to be issued against Baker. On April 29, Edwards returned home. That night, Baker went to Edwards' home and was arrested for violating the no-contact order. As a result of violating his bond, Baker was sentenced to thirty days in jail. Subsequently, Baker posted a $5,000 surety bond and was released.

Nicole Howland is a domestic violence prosecutor employed by the sheriff's office. Howland contacted Edwards in order to begin prosecuting Baker for the February incident. Edwards informed Howland that Baker was continuing to contact and harass her. Howland instructed Edwards to document any further contact as evidence that Baker was still acting in violation of the no-contact order.

---

that they are the same entity is the law of the case. We therefore do not address the legally settled distinction between a county government and a sheriff's office for liability purposes.

**2.** The facts are taken from the parties' "Stipulation of Facts" presented in the trial court.

Howland then contacted a Lexington County magistrate to request a bond revocation hearing. The magistrate agreed to schedule a hearing and contacted Baker's bondsman on August 4, 2003. The magistrate instructed the bondsman to have Baker appear in court two days later, August 6. Howland informed Edwards of the August 6 hearing and told her to be present and to bring the evidence of Baker's continuing harassment. Edwards told Howland that she feared Baker and was reluctant to attend, but Howland insisted she attend so the evidence could be admitted to prove Baker's violation of the no-contact order.

The August 6 bond revocation hearing was held in the magistrate's office, which was temporarily located in a small two-room building. The magistrate was seated at the head of the room behind a desk. Edwards was seated behind a desk on the left side of the room, facing the magistrate. Howland was seated to the right of Edwards. Baker was seated to the right of Howland, behind another desk. No one from the sheriff's office or the County took any steps to ensure security for the bond revocation hearing, and as a result, no officer was present and no other precautionary or security measures were employed.

After Howland presented evidence that Baker had violated the no-contact order and Baker had responded, the magistrate found Baker in contempt, revoked his bond, and sentenced him to thirty days in jail. As the magistrate was writing the sentence, Baker rose from his chair, struck Howland at least two times, and then pinned Edwards against the wall and struck her on the head at least three times. The bondsman eventually restrained Baker, and the magistrate sprayed Baker with pepper spray. A staff member called 911. Baker was arrested and Edwards was taken to the hospital and treated for her injuries.

Edwards filed a negligence action pursuant to the South Carolina Tort Claims Act alleging Respondents' gross negligence proximately caused her injury. In their answer, Respondents argued they owed no duty specific to Edwards under the public duty rule, contended Edwards' injury was caused by her own negligence, and asserted several exceptions to the waiver of immunity as provided in the Tort Claims Act.

The trial court granted Respondents' motion for summary judgment on the sole basis that Respondents owed no duty to Edwards under statutory law or common law. We certified Edwards' appeal pursuant to Rule 204(b), SCACR.

## II.

■ Summary judgment is appropriate where there is no genuine issue of material fact and it is clear the moving party is entitled to a judgment as a matter of law. Rule 56(c), SCRCP. When reviewing a grant of summary judgment, an appellate court applies the same standard used by the trial court. *Lanham v. Blue Cross & Blue Shield of S. C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). In this case, summary judgment was granted on the basis of the absence of a duty, which is a question of law for the court to determine. *See Doe v. Greenville County Sch. Dist.*, 375 S.C. 63, 72, 651 S.E.2d 305, 309 (2007) (recognizing that whether a duty exists is a question of law for the courts). We are thus presented with a legal question concerning the presence or absence of a duty under the circumstances presented.

## III.

### Establishing a Duty

■ An essential element in a cause of action based upon negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. *Doe*, 375 S.C. at 72, 651 S.E.2d at 309. Without a duty, there is no actionable negligence. *Id.* A plaintiff alleging negligence on the part of a governmental actor or entity may rely either upon a duty created by statute or one founded on the common law. *Arthurs ex rel. Estate of Munn v. Aiken County*, 346 S.C. 97, 104, 551 S.E.2d 579, 582 (2001). When the duty is created by statute, we refer to this as a "special duty," whereas when the duty is founded on the common law, we refer to this as a legal duty arising from "special circumstances." *See id.* at 109–10, 551 S.E.2d at 585 (explaining that this Court restricts the term special duty to those arising from statutes, whereas a legal duty arising from a "special circumstance" is created under the common law).

■■ There is no general duty to control the conduct of another or to warn a third person or potential victim of danger. *Faile v. S.C. Dept. of Juvenile Justice*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002). However, there are five exceptions to this rule: 1) where the defendant has a special relationship to the victim; 2) where the defendant has a special relationship to the injurer; 3) where the defendant voluntarily undertakes a duty; 4) where the defendant negligently or intentionally creates the risk; and 5) where a statute imposes a duty on the defendant. *Id.*

## 1. Statutory Duty

■ Edwards first argues provisions of the Criminal Domestic Violence Act (CDV Act), S.C.Code Ann. § 16–25–10 et seq. (2008), in conjunction with S.C.Code Ann. § 16–3–1525(G) (2008),[3] impose a special duty on Respondents. We disagree.

■ In *Parker v. Brown*, 195 S.C. 35, 10 S.E.2d 625 (1940), we adopted the "public duty rule." Under this rule, statutes which create or define the duties of a public office create no duty of care towards individual members of the general public. *Arthurs*, 346 S.C. at 105–06, 551 S.E.2d at 583. South Carolina has followed the public duty rule since 1940, and this rule remains the law of South Carolina today. However, we have carved out a narrow exception to the rule and found a statute imposes a special duty on a governmental entity if the following six-part test is met:

(1) an essential purpose of the statute is to protect against a particular kind of harm; (2) the statute, either directly or indirectly, imposes on a specific public officer a duty to guard against or not cause that harm; (3) the class of persons the statute intends to protect is identifiable before the fact; (4) the plaintiff is a person within the protected class; (5) the public officer knows or has reason to know the likelihood of harm to members of the class if he fails to do his duty; and (6) the officer is given sufficient authority to

---

3. Specifically, Edwards refers to § 16–25–20, which makes it unlawful to injure a household member and § 16–25–80, which provides that this article does not replace other criminal offenses. Section 16–3–1525(G) provides that a law enforcement agency "must provide any measures necessary to protect the victims and witnesses, including . . . physical protection in the courthouse."

act in the circumstances or he undertakes to act in the exercise of his office.

*Jensen v. Anderson County Dep't of Soc. Servs.,* 304 S.C. 195, 200, 403 S.E.2d 615, 617 (1991). "The public duty rule is a rule of statutory construction which aids the court in determining whether the legislature intended to create a private right of action for a statute's breach." *Vaughan v. Town of Lyman,* 370 S.C. 436, 442, 635 S.E.2d 631, 634 (2006) (recognizing that the dispositive issue is not whether the statute creates a duty, but rather whether the statute was intended to provide an individual a private right of action).

Edwards cites to provisions of the CDV Act making it unlawful to injure a household member, but she points to no provision of the CDV Act imposing a specific duty on Respondents that they failed to perform. In short, even if the CDV Act could be the source of a special duty imposed upon law enforcement, Edwards has not alleged a breach of duty created by the Act.

Edwards' further reliance on § 16-3-1525(G) in no manner bolsters her position. Section 16-3-1525(G) is merely a general statute that broadly recites the general duty of law enforcement agencies with regard to protecting victims and witnesses and clearly fails the six-part test. *See Arthurs,* 346 S.C. at 108, 551 S.E.2d at 584 (holding a statute requiring the sheriff's department to patrol the county merely broadly recited general duties and did not create a special duty). Moreover, the Legislature has spoken directly to its intent to foreclose a private cause of action under § 16-3-1525(G), for § 16-3-1565 states no provision in this article "creates a cause of action on behalf of a person against a public employee, public agency, the State, or an agency responsible for the enforcement of rights and provision of services set forth in this article."

## 2. Special Relationship with Edwards

Edwards argues she had a special relationship with Respondents because *she* was in the "functional custody" of the State, and therefore, Respondents owed her a specific duty. There are no allegations and there is no evidence in the record indicating that Edwards was in custody. Accordingly, we hold

Respondents owed no duty of protection to Edwards under her "functional custody" theory.

### 3. Creating the Risk and Respondents' Relationship with Baker

Edwards' final contention, with which we agree, is that Respondents owed her a common law duty because of the "special circumstances" presented. *Arthurs*, 346 S.C. at 108, 551 S.E.2d at 584 (recognizing that a duty may arise because of "special circumstances"). The special circumstances are Respondents' relationship with Baker and their actions in creating the risk of harm.

Respondents were well aware of Baker's unrelenting violent tendencies toward Edwards. Edwards had called the sheriff's office to report Baker's harassment on numerous occasions, and the sheriff's office arranged for Edwards to stay in a hotel after one of the incidents. The sheriff's office and the County, through its agent Howland,[4] arranged the bond revocation hearing at the magistrate's office with no security present. Despite Respondents' awareness that Edwards feared Baker and was reluctant to attend the bond revocation, Respondents strongly encouraged Edwards' presence.

Respondents cannot claim lack of knowledge of Baker's violent tendencies towards Edwards since the reason they were seeking to revoke Baker's bond was due to his failure to obey the no-contact order, which was issued as a direct result of his violent actions. We hold Respondents created a situation in which it was foreseeable that Baker would harm Edwards. *Compare Miletic v. Wal–Mart Stores, Inc.*, 339 S.C. 327, 529 S.E.2d 68 (Ct.App.2000) (holding Wal–Mart had no duty to protect a customer from a parking lot attack because Wal–Mart had no notice that the crime would occur).

We hold that Respondents owed Edwards a duty solely as a result of the unique facts of this case, i.e., "special circum-

---

4. Respondents stipulated that Howland was employed by the sheriff's office. Because of Howland's status as a sheriff's office employee, the sheriff's office is charged with Howland's knowledge and actions (or lack of action), and as a result of Respondents' position that the sheriff's office and Lexington County are the same entity, such knowledge is imputed to Lexington County.

stances." Respondents created a situation that they knew or should have known posed a substantial risk of injury to Edwards. Moreover, given Respondents' knowledge of Baker's demonstrated threats against Edwards, Respondents owed her a duty. Respondents' duty is one of due care and whether Respondents acted reasonably, negligently or grossly negligently is not before us. We do note that Respondents were not under a duty to guarantee Edwards' safety with absolute certainty. *See Madison ex rel. Bryant v. Babcock Center, Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006) (rejecting defendants' all or nothing approach with regard to the existence of a duty and noting that this argument "confuses the existence of a duty with standards of care establishing the extent and nature of the duty in a particular case").

## IV.

We reverse the trial court's grant of summary judgment and remand to the trial court for further proceedings.[5]

**REVERSED.**

TOAL, C.J., WALLER, PLEICONES and BEATTY, JJ., concur.

---

**5.** Respondents argue even if we were to find the existence of a duty, Edwards cannot show the remaining elements of her negligence claim. The trial court granted summary judgment based solely on the absence of a duty. Therefore, under this procedural posture, the record does not permit us to make those fact-driven determinations.