692 S.E.2d 900

**Willie L. JONES, Personal Representative of the Estate of Chad Jones, Petitioner,**

v.

**Leon LOTT, Linn Pitts, Gilbert Gallegos and Clark Frady, Individually and in their official capacities with the Richland County Sheriff's Department, Respondents.**

No. 26808.

Supreme Court of South Carolina.

Heard March 3, 2010.

Decided April 19, 2010.

Rehearing Denied May 14, 2010.

---

340

Hemphill P. Pride, II, of Columbia, for Petitioner.

William H. Davidson, II, Andrew F. Lindemann, and Robert D. Garfield, all of Davidson & Lindemann, of Columbia, for Respondents.

Chief Justice TOAL.

In this case, the Court granted Willie L. Jones's (Petitioner) request for a writ of certiorari to review the court of appeals' decision in *Jones v. Lott*, 379 S.C. 285, 665 S.E.2d 642 (Ct.App. 2008) affirming the trial court's grant of a directed verdict in favor of Leon Lott (Respondent).

### FACTS/PROCEDURAL HISTORY

Linn Pitts (Pitts) and Gilbert Gallegos (Gallegos), members of Richland County Sheriff's Department, attempted to pull over Chad Jones (Jones) because Jones committed a traffic violation. When the officers checked the tags on the vehicle, they were alerted it was stolen. Jones refused to stop so the officers pursued him. Eventually, Jones wrecked into an air conditioning unit at the Waverly Street apartments. Jones fled the scene on foot and dropped a .22 caliber revolver. The officers found Jones in the laundry room of a nearby house

where, after a brief struggle, he was apprehended. The officers found a clear plastic container they believed contained crack cocaine.[1] The officers handcuffed Jones and placed him in the rear of Pitts's police cruiser while they began preparing the requisite paperwork accompanying the arrest.

Jones was arrested for ten criminal and traffic offenses.[2] At the time of his arrest, Jones gave officers a false name. However, a Columbia Police Department officer on the scene correctly identified Jones. A check revealed Jones had outstanding warrants for attempted burglary, assault with intent to kill, and assault and battery with intent to kill.

While the officers were preparing their paperwork, Pitts and Gallegos noticed Jones fidgeting in the backseat of the cruiser. A third officer, Clark Frady (Frady), who had arrived with a transport van, assisted Gallegos in removing Jones from the cruiser and conducting a pat down search. The officers again secured Jones in the backseat of the cruiser with his hands handcuffed behind his back and his seatbelt fastened. Initially, the officers left the cruiser windows open, but closed them because Jones continued to yell out to passersby. Because it was a warm day, Pitts left the engine running so the air conditioning could operate, and opened the interior Plexiglas window to let the air reach Jones.

Thereafter, Jones maneuvered his handcuffed hands to the front of his body, squeezed through the open Plexiglas window into the driver's seat, and locked the doors. The officers noticed Jones in the front seat when they heard the sound of him turning the key to the already running cruiser. The officers yelled for Jones to stop and unlock the doors. Gallegos unsuccessfully attempted to break the front driver's side window with his baton. Gallegos then ran to his own cruiser, anticipating another pursuit, while Pitts tried to unlock the passenger side door with his key.

---

1. Police later determined the white powder was washing detergent.

2. These included: failure to use a turn signal; leaving the scene of an accident; failure to stop for blue lights and siren; driving without a driver's license; possession of a stolen vehicle; possession with intent to distribute crack cocaine; unlawful carrying of a pistol; possession of a pistol under the age of twenty-one; resisting arrest; and possession with intent to distribute crack cocaine within a half mile of school.

Jones placed the cruiser in reverse, backed up, and stopped. Both Pitts and Frady positioned themselves in front of the cruiser and shouted at Jones to stop the vehicle and turn off the engine. Jones placed the cruiser in drive, slumped in the driver's seat, accelerated, and cut left toward Pitts. Pitts moved out of the way and fired a shot into the rear hubcap. Jones then turned the cruiser and drove directly at Frady, who fired twice into the vehicle. One of Frady's shots struck Jones in the back of the head, killing him.

Jones's estate brought a wrongful death and survival action against Respondent, Pitts, Gallegos, and Frady, individually and in their official capacities with the Richland County Sheriff's Department based on allegations of negligence and civil conspiracy. The circuit court granted a motion for summary judgment to the defendants below, but allowed the case to proceed against Respondent in his official capacity as to the gross negligence claim. The circuit court ultimately granted Respondent's motion for a directed verdict at the close of Petitioner's case on the following grounds: (1) the deputies did not owe a duty to Jones to secure him in the back of the cruiser in a manner that made it impossible to escape; (2) any negligence on the deputies' part in securing Jones in the cruiser was outweighed as a matter of law under our comparative negligence standard by Jones's actions in his escape attempt; (3) the use of deadly force by the deputies in that situation was objectively reasonable as a matter of law; and (4) the Sheriff's Department was entitled to immunity under S.C.Code Ann. § 15–78–60(6) (2005) for the method of providing police protection.

On appeal to the court of appeals, Petitioner argued the circuit court erred in granting Respondent's motion for a directed verdict on the following grounds: (1) the deputies had no duty to Jones with respect to the manner in which they confined and secured him upon taking him into custody; (2) the use of deadly force by the deputies was objectively reasonable as a matter of law; and (3) Jones's attempted escape outweighed any negligence on the part of the deputies in failing to secure him. The court of appeals affirmed the circuit court on two grounds: (1) because Petitioner failed to appeal the circuit court's grant of a directed verdict on the issue of Respondent's immunity under section 15–78–60(6), the

circuit court's ruling on that issue became the law of the case and warranted affirmance under the two issue rule, and (2) section 15–78–60(21) provided an additional sustaining ground upon which to affirm the circuit court.[3]

## ISSUES

I. Did the court of appeals err in finding that the lower court's ruling under section 15–78–60(6) was not raised as an issue for appeal?

II. Did the court of appeals err in finding that Respondent was entitled to immunity under section 15–78–60(21) as an additional sustaining ground?

## STANDARD OF REVIEW

When considering a directed verdict motion, the trial court is required to view the evidence and the inferences that can be drawn from that evidence in the light most favorable to the nonmoving party. *Hinkle v. National Cas. Ins. Co.*, 354 S.C. 92, 96, 579 S.E.2d 616, 618 (2003) (citation omitted). This Court will reverse the trial court's rulings on these motions only where there is no evidence to support the rulings or where the rulings are controlled by an error of law. *Id.* (citation omitted).

## LAW/ANALYSIS

### A. S.C. Code Ann. § 15–78–60

Petitioner argues this Court should reverse the decision of the court of appeals and find that Respondent was not entitled to a directed verdict on the basis of either section 15–78–60(6) or section 15–78–60(21).[4] We disagree.

---

3. Section 15–78–60 states:

 The governmental entity is not liable for a loss resulting from:

 . . .

 (6) civil disobedience, riot, insurrection, or rebellion or the failure to provide the method of providing police or fire protection;

 . . .

 (21) the decision to or implementation of release, discharge, parole, or furlough of any persons in the custody of any governmental entity, including but not limited to a prisoner, inmate, juvenile, patient, or client or the escape of these persons;

4. The two issues outlined above can be addressed simultaneously because Petitioner asserts a gross negligence standard applies to both.

■■■ "Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the lower court." *Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779–80 (2004) (citations omitted). The statement of each issue on appeal shall be concise and direct, and broad general statements of issues may be disregarded by this Court. Rule 208(b)(1)(B), SCACR. "Ordinarily, no point will be considered which is not set forth in the statement of the issues on appeal." *Id.* "Every ground of appeal ought to be so distinctly stated that the reviewing court may at once see the point which it is called upon to decide without having to 'grope in the dark' to ascertain the precise point at issue." *Forest Dunes Assocs. v. Club Carib, Inc.*, 301 S.C. 87, 89, 390 S.E.2d 368, 370 (Ct.App.1990) (citation omitted).

■■■ Under the two issue rule, where a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case. *See Anderson v. Short*, 323 S.C. 522, 525, 476 S.E.2d 475, 477 (1996); *see also First Union Nat'l Bank of S.C. v. Soden*, 333 S.C. 554, 566, 511 S.E.2d 372, 378 (Ct.App.1998) (holding an "unchallenged ruling, right or wrong, is the law of the case and requires affirmance"). This Court has explained that the two issue rule is applicable in situations not involving a jury:

> It should be noted that although cases generally have discussed the "two issue" rule in the context of the appellate treatment of general jury verdicts, the rule is applicable under other circumstances on appeal, including affirmance of orders of trial courts. For example, if a court directs a verdict for a defendant on the basis of the defenses of statute of limitations and contributory negligence, the order would be affirmed under the "two issue" rule if the plaintiff failed to appeal both grounds or if one of the grounds required affirmance.

*Anderson v. S.C. Dep't of Highways & Pub. Transp.*, 322 S.C. 417, 420 n. 1, 472 S.E.2d 253, 255 n. 1 (1996).

■■■ A respondent "may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court." *I'On, L.L.C. v.*

*Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000). "The appellate court may review respondent's additional reasons and, if convinced it is proper and fair to do so, rely on them or any other reason appearing in the record to affirm the lower court's judgment." *Id.* at 420, 526 S.E.2d at 723; *see also* Rule 220(c), SCACR ("The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.").

"Immunity is an affirmative defense which must be pleaded and can be waived." *Rayfield v. S.C. Dep't of Corrs.*, 297 S.C. 95, 105, 374 S.E.2d 910, 916 (Ct.App.1988). "When a governmental entity asserts multiple exceptions to the waiver of immunity and at least one of the exceptions contains a gross negligent standard, we must interpolate the gross negligence standard into the other exceptions." *Proctor v. Dep't of Health and Envtl. Control*, 368 S.C. 279, 311, 628 S.E.2d 496, 513 (Ct.App.2006). However, this Court has held that "the better practice is to allow the government to assert all relevant exceptions, and apply the gross negligence standard to all when it is contained in one applicable exception." *Steinke v. S.C. Dep't of Labor, Licensing and Regulation*, 336 S.C. 373, 397, 520 S.E.2d 142, 154 (1999).

Petitioner argues he appealed the trial court's grant of a directed verdict on the issue of Respondent's immunity under section 15–78–60(6) because the argument was subsumed in the central issue of the case, which addresses the trial judge's ruling that the officers were not negligent or grossly negligent. Petitioner contends that in issue two of his appellate brief to the court of appeals he argued that where multiple exceptions to the waiver of immunity are invoked and at least one of those exceptions contains a gross negligence standard, the courts must interpolate the gross negligence standard into the other exceptions. Specifically, Petitioner argues the gross negligence standard of section 15–78–60(25) applies to all claims of immunity raised by Respondent, including sections 15–78–60(6) and (21).

Petitioner's second issue on appeal to the court of appeals states, "Did the trial court err in finding the use of deadly force by the Richland County deputies was objectively reasonable, as a matter of law, and that the officers were not

negligent, as a matter of law?" There was no mention of section 15–78–60(6) or Tort Claims Act immunity. Moreover, the second issue does not reference a "gross negligence" standard. This left the court of appeals to "grope in the dark" to ascertain the precise point at issue. The issue raised by Petitioner was not concise and direct, but rather a broad general statement that ought to be disregarded by this Court. Hence, because Petitioner failed to preserve the issue for review, it became the law of the case under the two issue rule. Therefore, the court of appeals was correct in holding Respondent was entitled to immunity under section 15–78–60(6).

 Petitioner's contention that section 15–78–60(25)'s gross negligence standard should be interpolated into the other pleaded exceptions is misplaced. Respondent never raised an affirmative defense that contained a gross negligence standard. Thus, under this Court's holding in *Steinke*, the gross negligence standard is not interpolated into either section 15–78–60(6) or (21). Also, Respondent raised section 15–78–60(21) as an additional ground in his directed verdict motion. Petitioner's central objection to section 15–78–60(21) is that the gross negligence standard applies to that section. However, as noted above the gross negligence standard does not apply because Respondent did not plead a section containing a gross negligence standard. Thus, the court of appeals correctly held that section 15–78–60(21) was an additional sustaining ground.

## B. *Edwards*

Petitioner also contends this Court's recent decision in *Edwards v. Lexington County Sheriff's Dep't*, 386 S.C. 285, 688 S.E.2d 125 (2010) supports the proposition that the officers owed a duty of care to Jones by virtue of a special relationship they had with Jones. In *Edwards*, this Court held the Lexington County Sheriff's Department (Lexington) owed Teresa Edwards (Edwards) a duty of care because Lexington created a situation in which it was foreseeable that Allen Baker (Baker) would harm Edwards. *Edwards*, 386 S.C. at 293–94, 688 S.E.2d at 130. In that case, Lexington was well aware of Baker's unrelenting violent tendencies

toward Edwards.[5] *Id.* Moreover, this Court stressed that our holding in *Edwards* resulted from the unique facts of that case. *Id.*

The present case is simply inapposite to our holding in *Edwards.* Jones was trying to escape the custody of a governmental entity. Jones's attempted escape places this case squarely within one of the exceptions in section 15–78–60. Section 15–78–60(21) provides a governmental entity is not liable for a loss resulting from "the decision to or implementation of release, discharge, parole, or furlough of any persons in the custody of any governmental entity . . . or the escape of these persons." Hence, even if all of Petitioner's issues were preserved for review, the deputies would still be immune from suit pursuant to section 15–78–60(21) because Jones was trying to escape.

## Conclusion

Because Petitioner failed to appeal the circuit court's holding that Respondent was entitled to immunity under section 15–78–60(6), that finding became the law of the case under the two issue rule. Also, the court of appeals correctly held that section 15–78–60(21) provided an additional sustaining ground to the circuit court's findings. Lastly, even if all of Petitioner's issues were preserved for review, the deputies would still be immune from suit pursuant to section 15–78–60(21). Hence, for the aforementioned reasons, the decision of the court of appeals is affirmed.

BEATTY, KITTREDGE, JJ., and Acting Justice STEVEN H. JOHN, concur.

PLEICONES, J., concurring in result.

---

5. Edwards had called the sheriff's office to report Baker's harassment on numerous occasions, and Lexington arranged for Edwards to stay in a hotel after one of the incidents. *Edwards,* 386 S.C. at 293–94, 688 S.E.2d at 130. Lexington arranged the bond revocation hearing at the magistrate's office with no security present. *Id.* Despite Lexington's awareness that Edwards feared Baker and was reluctant to attend the bond revocation, Lexington strongly encouraged Edwards's presence. *Id.*