**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

South Carolina Department of Social Services, Respondent,

v.

Patricia Beaver Crews, Steve Trogdon, Danny Wade, John Doe and John Roe, Defendants,

Of whom Patricia Beaver Crews is the Appellant.

In the interest of minors under the age of eighteen.

Appellate Case No. 2015-001228

_____

Appeal From Colleton County
Kellum W. Allen and Peter L. Fuge, Family Court Judges

_____

Unpublished Opinion No. 16-UP-307
Submitted May 20, 2016 – Filed June 17, 2016

_____

**AFFIRMED**

_____

Marshall L. Horton and Lindsay Yoas Goodman, both of Horton & Goodman, LLC, of Bluffton, for Appellant.

Jillian D. Ullman, of the South Carolina Department of Social Services, of Walterboro, for Respondent.

Gregory Michael Galvin, of Galvin Law Group, of
Bluffton, for the Guardian ad Litem.

**MCDONALD, J.:** Patricia Beaver Crews (Mother) appeals the family court's order terminating her parental rights to her minor son (Son). On appeal, Mother argues the family court erred in (1) terminating her parental rights and (2) not considering a prior permanency planning order that stated termination of parental rights (TPR) was not appropriate. We affirm.

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *see also Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis*, 392 S.C. at 385, 709 S.E.2d at 651-52. The burden is upon the appellant to convince this court that the family court erred in its findings. *Id.*

Mother first argues the family court erred in terminating her parental rights. We disagree.

"Because terminating the legal relationship between natural parents and a child is one of the most difficult issues an appellate court has to decide, great caution must be exercised in reviewing termination proceedings and termination is proper only when the evidence clearly and convincingly mandates such a result." *S.C. Dep't of Soc. Servs. v. Roe*, 371 S.C. 450, 455, 639 S.E.2d 165, 168 (Ct. App. 2006). The family court may order TPR upon finding a statutory ground for TPR is satisfied and also finding TPR is in the child's best interest. S.C. Code Ann. § 63-7-2570 (Supp. 2015). The grounds for TPR must be proven by clear and convincing evidence. *S.C. Dep't of Soc. Servs. v. Parker*, 336 S.C. 248, 254, 519 S.E.2d 351, 354 (Ct. App. 1999).

We find clear and convincing evidence showed Son was harmed, and due to the severity or repetition of the abuse or neglect, it was not reasonably likely Mother's

home could be made safe.[1]  *See* S.C. Code Ann. § 63-7-2570(1) (Supp. 2015 ) (providing a statutory ground for TPR is met when "[t]he child or another child while residing in the parent's domicile has been harmed . . . , and because of the severity or repetition of the abuse or neglect, it is not reasonably likely that the home can be made safe within twelve months").  The Department of Social Services (DSS) presented clear and convincing evidence showing Son was harmed by Mother's drug use and violent relationship with her husband, which placed Son at risk of physical abuse or neglect.  Additionally, DSS presented clear and convincing evidence showing that due to the severity or repetition of the abuse or neglect, it was not reasonably likely Mother's home could be made safe.  DSS's involvement with this family began in October 2010, when Mother tested positive for marijuana and alcohol.  Mother complied with a placement plan that included attending drug and alcohol treatment and domestic violence counseling, and Son was returned to her in January 2011.  In June 2011—approximately six months later—Son entered foster care again; at that time DSS had concerns with domestic violence in the home, and Mother tested positive for crack cocaine.  Mother again completed treatment and Son was returned to her on October 31, 2011.  Son was removed from Mother again in March 2012 after Mother tested positive for drugs, and he was returned to Mother on August 16, 2012.  However, less than four months later, Son returned to foster care for a fourth time after Mother tested positive for cocaine.

We acknowledge Mother completed an inpatient treatment program for drugs and alcohol in November 2013 that she claimed was more intensive than the prior drug treatment programs she attended; however, Mother did not begin that program until October 2013, approximately ten months after Son was removed.  Further, although Mother acknowledged Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings were important aspects of her treatment plan, she

---

[1] Mother incorrectly contends the only ground the family court relied on was her failure to remedy the conditions causing removal.  In its final order, the family court also terminated Mother's parental rights based on the severity or repetition of Mother's abuse or neglect.  We acknowledge that under the two-issue rule, this unappealed ruling would be law of the case.  However, we address the merits because this action involves the interests of a minor child.  *See Joiner ex rel. Rivas v. Rivas*, 342 S.C. 102, 107, 536 S.E.2d 372, 374 (2000) ("[P]rocedural rules are subservient to the court's duty to zealously guard the rights of minors.").

admitted she was not attending twice per week "but yeah, as much as possible." Based on Mother's extensive history with crack cocaine—which she admitted was an addiction lasting eight or nine years that once caused her to use approximately $200 to $300 of crack cocaine per day—we find Mother should have been more compliant with her recovery. Because Mother was not regularly attending ongoing meetings necessary to her recovery, clear and convincing evidence showed it was not reasonably likely Mother's home could be made safe within twelve months.

Additionally, we find clear and convincing evidence showed Mother failed to remedy the conditions causing the removal. *See* S.C. Code Ann. § 63-7-2570(2) (Supp. 2015) (providing a statutory ground for TPR is met when "[t]he child has been removed from the parent . . . and has been out of the home for a period of six months following the adoption of a placement plan . . . and the parent has not remedied the conditions [that] caused the removal"). Mother had an extensive history with DSS that included multiple placement plans and referrals to drug and alcohol treatment. After the December 2012 removal, Mother waited approximately ten months to begin drug and alcohol treatment even though DSS asked her to begin treatment around December or January. Although Mother completed the inpatient treatment, by Mother's own admission she was not attending AA or NA meetings twice per week. We find the ongoing meetings were an important component to remedying her drug addiction.

Additionally, we find Mother's contention that her last positive drug test was in December 2012 is inaccurate. Although it is true Mother did not test positive for drugs after December 2012, the DSS caseworker testified Mother refused a drug and alcohol test on March 4, 2014—just two months prior to the TPR hearing. We find Mother's history with DSS that included multiple referrals for drug and alcohol treatment, Mother's refusal to take the March 4, 2014 drug test, and Mother's inconsistent attendance at AA and NA meetings constituted clear and convincing evidence to support this statutory ground.

Finally, we find TPR is in Son's best interest. *See S.C. Dep't of Soc. Servs. v. Smith*, 343 S.C. 129, 133, 538 S.E.2d 285, 287 (Ct. App. 2000) (providing the best interest of the child is the paramount consideration in a TPR case); S.C. Code Ann. § 63-7-2620 (2010) ("The interest[] of the child shall prevail if the child's interest and the parental rights conflict."). We acknowledge Mother regularly visited Son and Son looked forward to visiting Mother. However, by the time of the TPR hearing, Son had spent the prior three-and-a-half years in and out of foster care. After the last removal, Mother waited approximately ten months to begin

treatment; at the time of the TPR hearing, she was not regularly attending NA or AA meetings and had refused a drug test just two months before. The DSS caseworker and the guardian ad litem (the GAL) both acknowledged Son desired stability. Based on Mother's history and the fact she was not fully compliant with treatment at the time of the TPR hearing, we question whether Mother can provide the stability Son wants and needs.

Mother argues on appeal that the family court did not consider Son's relationship with his sister when determining whether TPR was in Son's best interest. However, the GAL reported Son was happy to no longer be placed in foster care with his sister, and the GAL believed Son's relationship with his sister was unhealthy. Thus, we do not believe this sibling relationship is a compelling reason to reverse TPR.

The GAL conducted a thorough investigation and provided a thorough report recommending TPR. She stated Son's foster parents had discussed adopting him and she believed he was "adoptable" because "he's an awesome kid." *See* S.C. Code Ann. § 63-7-2510 (2010) ("The purpose of [the TPR statute] is to establish procedures for the reasonable and compassionate [TPR] where children are abused, neglected, or abandoned in order to protect the health and welfare of these children and make them eligible for adoption . . . ."). Based on the foregoing, we find TPR is in Son's best interest.

Mother next argues the family court erred by not considering a September 30, 2013 permanency planning order that stated TPR was not in Son's best interest. Mother argues permanency planning orders are final orders, and the family court must find a change in circumstances before it can deviate from a prior permanency planning order. We disagree.

"When a child is in the custody of [DSS], [DSS] shall file a petition to terminate parental rights . . . if: (1) a child has been in foster care under the responsibility of the State for fifteen of the most recent twenty-two months." S.C. Code Ann. § 63-7-1710(A)(1) (Supp. 2015). "This section does not apply: (1) to a child for whom the family court has found that initiation of [TPR] is not in the best interests of the child . . . ." S.C. Code Ann. § 63-7-1710(C) (2010). "[DSS] may file an action for [TPR] without first seeking the court's approval of a change in the permanency plan . . . and without first seeking an amendment of the placement plan . . . ." S.C. Code Ann. § 63-7-2530(B) (Supp. 2015).

Mother correctly contends permanency planning orders are final orders. *See Hooper v. Rockwell*, 334 S.C. 281, 291, 513 S.E.2d 358, 364 (1999) ("[A]ny order issued as a result of a merit hearing, as well as any later order issued with regard to a treatment, placement, or permanent plan, is a final order . . . ."). However, their nature as final orders does not require the family court to find a change in circumstances before considering TPR. Because DSS has the statutory authority to file a TPR action without first seeking a change in a permanent plan or placement plan, we find the legislature did not intend findings in permanency planning orders to be binding at future TPR hearings. *See* § 63-7-2530(B).

Further, the order Mother relies on contains qualifying language showing the findings were not intended to be binding at future hearings. When read in its entirety, the September 2013 permanency planning order did not preclude DSS from pursuing TPR or the family court from considering TPR. In the September 2013 permanency planning order, the family court determined Son was subject to section 63-7-1710 and TPR was not in Son's best interest "because [Son] will achieve permanency upon compliance with this order," which constituted a "compelling reason for not initiating [TPR] at this time." The family court was making a statutory finding based on the circumstances that existed at the time of the hearing. The qualifying language *at this time* and the family court's adoption of a plan of reunification concurrent with TPR and adoption indicated the family court did not intend to preclude a future court from considering TPR. Based on the foregoing, we find the September 2013 permanency planning order did not preclude the family court from considering TPR.

**AFFIRMED.**[2]

**LOCKEMY, C.J., concurs.**

**WILLIAMS, J., concurring:** I concur in the result reached by the majority. I write separately because I believe the two-issue rule renders our discussion of the statutory grounds for TPR unnecessary. In its final order, the family court found two statutory TPR grounds by clear and convincing evidence: (1) Son was harmed, and it was not reasonably likely that the home can be made safe within twelve months; and (2) Mother failed to remedy the conditions causing Son's removal. *See* S.C. Code Ann. § 63-7-2570(1)–(2) (Supp. 2015). In her brief, however,

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.

Mother only appealed the TPR ground for failure to remedy conditions.  Thus, the family court's finding on the other TPR ground is the law of the case.  *See Jones v. Lott*, 387 S.C. 339, 346, 692 S.E.2d 900, 903 (2010) ("Under the two issue rule, whe[n] a decision is based on more than one ground, the appellate court will affirm unless the appellant appeals all grounds because the unappealed ground will become the law of the case.").  Accordingly, regarding Mother's first claim of error, I would only address the family court's finding that TPR was in Son's best interest.