805 S.E.2d 578

**John DOE 2, Appellant,**

**v.**

**THE CITADEL, Respondent.**

**Appellate Case No. 2015-001505**
**Opinion No. 5504**

Court of Appeals of South Carolina.

Heard May 9, 2017
Filed August 2, 2017
Withdrawn, Substituted, and Refiled September 27, 2017
Certiorari Denied March 28, 2018

William Mullins McLeod, Jr., and Jacqueline LaPan Edgerton, both of McLeod Law Group, LLC, of Charleston, for Appellant.

M. Dawes Cooke, Jr., Randell Croft Stoney, Jr., and John William Fletcher, all of Barnwell Whaley Patterson & Helms, LLC, of Charleston, for Respondent.

WILLIAMS, J.:

In this civil matter, John Doe 2 (Doe) appeals the circuit court's grant of summary judgment to The Citadel, arguing the court erred in dismissing his claims of negligence/gross negligence and outrage. We affirm.

## FACTS/PROCEDURAL HISTORY

This case is one of many lawsuits stemming from a child sexual abuse scandal involving a summer camp at The Citadel, The Military College of South Carolina (The Citadel), and Louis "Skip" ReVille. On April 23, 2007, the father of a former

camper at The Citadel's youth summer camp notified Mark Brandenburg, The Citadel's general counsel, that one of the camp's counselors had engaged in sexual misconduct at the camp with his son five years earlier. The former camper's father told Brandenburg a counselor named Skip invited his son into his dorm room, where the two watched pornography together and masturbated. Brandenburg subsequently spoke by telephone with the former camper, then nineteen years old, who confirmed that Skip had invited him into his room, showed him pornography, and convinced him to masturbate. After reviewing camp records, Brandenburg was able to identify the counselor as ReVille, who worked at the camp for three summers from 2001 to 2003.

On April 24, 2007, Brandenburg—along with Colonel Joseph Trez, an executive assistant to John Rosa, The Citadel's president—met with ReVille, a Citadel graduate who had also worked with college students as a part-time, temporary tutor at The Citadel's writing center from August 2006 to April 2007. During the meeting, ReVille emphatically denied the former camper's allegations. Brandenburg continued to investigate the allegations from April through July 2007, and by May 2007, had informed President Rosa of the allegations. On July 1, 2007, Brandenburg traveled to Texas to meet with the former camper and his parents. At some point during that summer, however, Brandenburg fell out of touch with the former camper. Brandenburg then contacted potential witnesses who may have been present during the commission of ReVille's alleged misconduct, but he failed to find one that could corroborate the former camper's accusations. The Citadel ended its investigation without reporting the complaint to law enforcement.[1]

In October 2011, ReVille was arrested after confessing to abusing numerous boys while employed in various educational and athletic positions in the Charleston area over the span of nearly a decade. On June 13, 2012, ReVille pleaded guilty to numerous charges involving the abuse of twenty-three boys in Charleston, Berkeley, and Dorchester counties and was sentenced to fifty years in prison.

---

1. Neither the former camper nor his family reported the incident to law enforcement officials during this time.

ReVille met Doe—a young male about to enter the seventh grade—and his family in the summer of 2005, through Re-Ville's involvement with AAU basketball at Pinewood Preparatory School (Pinewood Prep) in Summerville, South Carolina. That summer, ReVille began "grooming" Doe and later abused Doe at ReVille's residence, and he continued to abuse Doe throughout the 2005–2006 school year. At the time, ReVille was a teacher at Pinewood Prep. Doe, however, neither attended Pinewood Prep nor any summer camps or educational programs at The Citadel. In the spring of 2006, ReVille was terminated from his teaching position at Pinewood Prep and accepted Doe's parents' offer to move into the mother-in-law suite connected to their house. While living there from May 2006 to June 2007, and for a short period after moving out, ReVille continuously abused Doe. ReVille's sexual abuse of Doe ended when Doe and his family moved to Georgia in the summer of 2007.

Doe filed the instant action against The Citadel on March 19, 2012, alleging claims of negligence/gross negligence and outrage. In his complaint, Doe claimed actions taken by The Citadel created a risk that ReVille would be placed in positions to enable him to victimize young boys, and subsequently, its failure to prevent this risk allowed ReVille to sexually abuse him. Doe asserted The Citadel was in a unique position to warn or prevent ReVille from sexually abusing young victims like Doe because The Citadel knew of the reported sexual abuse and it had a special relationship with ReVille. The Citadel filed a renewed motion for summary judgment on April 24, 2015.[2] After conducting a hearing, the circuit court granted The Citadel's motion on July 6, 2015.

In its order, the circuit court dismissed Doe's negligence claims because it found The Citadel did not owe Doe a duty of care to prevent ReVille from sexually abusing Doe. Specifically, the court noted the majority of the abuse of Doe occurred before the April 2007 allegations by the former camper. Moreover, the circuit court found it was "impossible to differentiate the injury that [Doe] suffered after The Citadel argu-

---

**2.** The Citadel initially filed a motion for summary judgment in this and related cases on March 6, 2014. On December 9, 2014, the circuit court denied The Citadel's motion.

ably should have stopped ReVille from abusing him from the unquestionably devastating injury that [Doe] suffered from his longstanding, ongoing abuse by ReVille." Accordingly, the court concluded Doe's injuries arose before, and were not proximately caused by, any breach of duty by The Citadel.

The court also dismissed the outrage claim as a matter of law because it was barred by the South Carolina Tort Claims Act [3] (TCA) and alternatively found no evidence suggested The Citadel directed any conduct toward Doe. This appeal followed.

**STANDARD OF REVIEW**

"An appellate court reviews a grant of summary judgment under the same standard applied by the [circuit] court pursuant to Rule 56, SCRCP." *Lanham v. Blue Cross & Blue Shield of S.C., Inc.*, 349 S.C. 356, 361, 563 S.E.2d 331, 333 (2002). Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that . . . no genuine issue [exists] as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), SCRCP. When determining whether triable issues of material fact exist, the court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Fleming v. Rose*, 350 S.C. 488, 493–94, 567 S.E.2d 857, 860 (2002). When the preponderance of the evidence standard applies, the nonmoving party is only required to submit a mere scintilla of evidence to withstand a motion for summary judgment. *Hancock v. Mid-South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

**LAW/ANALYSIS**

**I. Negligence/Gross Negligence**

Doe first argues the circuit court erred in finding The Citadel did not owe a duty to Doe. We disagree.

To prove negligence, the plaintiff must show "(1) [the] defendant owes a duty of care to the plaintiff; (2) [the] defendant breached the duty by a negligent act or omission; (3) [the] defendant's breach was the actual or proximate cause

---

3. S.C. Code Ann. §§ 15-78-10 through -220 (2005 & Supp. 2016).

of the plaintiff's injury; and (4) [the] plaintiff suffered an injury or damages." *Roe v. Bibby*, 410 S.C. 287, 293, 763 S.E.2d 645, 648 (Ct. App. 2014) (quoting *Doe v. Marion*, 373 S.C. 390, 400, 645 S.E.2d 245, 250 (2007)). Negligence is a mixed question of law and fact with the existence and scope of a duty being questions of law and a breach of duty being a question for the jury. *Miller v. City of Camden*, 317 S.C. 28, 31, 451 S.E.2d 401, 403 (Ct. App. 1994). "In a negligence action, the court must determine, as a matter of law, whether the defendant owed a duty of care to the plaintiff." *Faile v. S.C. Dep't of Juvenile Justice*, 350 S.C. 315, 334, 566 S.E.2d 536, 545 (2002). Negligence is not actionable without a duty of care. *Bishop v. S.C. Dep't of Mental Health*, 331 S.C. 79, 86, 502 S.E.2d 78, 81 (1998).

▮ South Carolina law does not recognize a general duty to warn a third party or potential victim of danger or to control the conduct of another. *Rogers v. S.C. Dep't of Parole & Cmty. Corr.*, 320 S.C. 253, 255, 464 S.E.2d 330, 332 (1995). However, this rule has five recognized exceptions: (1) when the defendant has a special relationship to the victim; (2) when the defendant has a special relationship to the injurer; (3) when the defendant voluntarily undertakes a duty; (4) when the defendant intentionally or negligently creates the risk; and (5) when a statute imposes a duty on the defendant. *Faile*, 350 S.C. at 334, 566 S.E.2d at 546.

Doe does not argue the existence of any special relationship to qualify for the special relationship exceptions. Rather, Doe asserts The Citadel is liable to Doe "for its own failure to act with due care in voluntarily undertaking the duties to investigate, arrest, and punish ReVille; for taking actions that negligently created the risk that ReVille would sexually abuse [Doe]; and for action[s] to conceal ReVille's pedophilia in violation of Title IX."[4] We address each argument in turn.

## A. Voluntary Undertaking

▮ Doe first asserts The Citadel established a duty of care to Doe when it voluntarily undertook the duty to investigate claims of sexual abuse on its campus, turn offenders over to its

4. Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688 (2012).

own law enforcement entity, and arrest offenders. We disagree.

Under South Carolina law, the Restatement of Torts establishes the recognition of a voluntarily assumed duty and states,

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> > (a) his failure to exercise such care increases the risk of such harm, or
> >
> > (b) the harm is suffered because of the other's reliance upon the undertaking.

*Johnson v. Robert E. Lee Acad., Inc.*, 401 S.C. 500, 504–05, 737 S.E.2d 512, 514 (Ct. App. 2012) (quoting RESTATEMENT (SECOND) OF TORTS § 323 (AM. LAW INST. 1965)).

In the instant case, The Citadel's general counsel, Brandenburg, conducted an investigation into the former camper's allegations of sexual abuse by ReVille after the former camper's father called The Citadel on April 23, 2007. Under section 323 of the Restatement of Torts, however, this undertaking cannot create a duty unless (1) Brandenburg's failure to exercise reasonable care actually *increased* the risk of harm to Doe or (2) Doe suffered harm because he relied upon Brandenburg's undertaking. *See id.* at 505, 737 S.E.2d at 514.

Upon our review of the record, we find no evidence supports a showing that Brandenburg's actions increased the risk of harm to Doe. In fact, the record demonstrates that ReVille was already abusing Doe—for nearly two years—when the April 23, 2007 allegations were made. Thus, any failure of The Citadel to exercise due care in its investigation regarding a former camper could not have reasonably increased the risk of harm to Doe when the harm was already occurring. Moreover, the record indicates Brandenburg conducted his investigation as the college's general counsel to "find out what happened" and determine possible avenues for settlement for the protection of The Citadel. It was not conducted as part of a criminal investigation. *See Goode v. St. Stephens United Methodist*

*Church,* 329 S.C. 433, 444–45, 494 S.E.2d 827, 833 (Ct. App. 1997) (finding an owner of an apartment complex did not undertake a duty to protect a social guest from a criminal assault occurring at the complex when providing security to the complex was taken for the protection of the tenants and not the general public). Last, because Doe had no prior relationship with The Citadel and no evidence indicates Doe relied on Brandenburg's investigation to prevent further harm, The Citadel did not create a duty when it investigated the April 23, 2007 allegations.

▆ Nevertheless, Doe claims the evidence presented at summary judgment [5] established The Citadel violated its own policies [6] from 1998 to 2005 by not investigating ReVille for sexual abuse of children. Additionally, Doe argues The Citadel's policies required action following the April 2007 allegations and its failure to adhere to the policies demonstrated a lack of due care.

We disagree with Doe's contention that The Citadel's deviations from its own policies and procedures, both prior to and following the April 23, 2007 allegations, demonstrate a lack of due care and create a triable issue as to whether The Citadel voluntarily assumed a duty to investigate and arrest ReVille for sexual abuse of children. Indeed, we find the internal policies created by The Citadel do not establish a voluntary undertaking of a duty; rather, they can only serve as evidence of the standard of care if the duty was established by law. *See Doe ex rel. Doe v. Wal-Mart Stores, Inc.,* 393 S.C. 240, 247, 711 S.E.2d 908, 912 (2011) ("[I]f no duty has been established,

---

**5.** While Doe states facts in support of his argument, we note that some of the facts cited are not supported by evidence in the record. In particular, Doe asserts The Citadel was aware of ReVille's pedophilia as early as 1998, when he received services from the campus counseling center. Moreover, Doe asserts that one of ReVille's victims (Camper Doe 6), a former camper and counselor, was fired by Jennifer Garrott, the camp's deputy director, when he attempted to report ReVille's abuse to her in 2005. Because these facts do not appear in the record, we do not consider them. *See* Rule 210(h), SCACR ("[T]he appellate court will not consider any fact which does not appear in the Record on Appeal.").

**6.** The Citadel implemented new policies in 2001 for the supervision of its camp and counselors after it learned of the sexual abuse of campers by a former senior counselor.

evidence as to the standard of care is irrelevant. Only when there is a duty would a standard of care need to be established."); *id.* at 248, 711 S.E.2d at 912 (holding Wal-Mart did not voluntarily undertake a duty despite creating an internal policy that its photo technician violated by destroying photographs depicting child abuse and not informing the store manager or keeping them as evidence, and finding the policy only served as evidence of the standard of care). Therefore, any violation of an internal policy does not give rise to the voluntary assumption of a duty and does not establish that The Citadel owed a duty of care as a matter of law.

## B. Negligent Creation of the Risk

Doe next asserts The Citadel is liable for negligently creating the risk that ReVille would sexually abuse Doe. We disagree.

In *Edwards v. Lexington County Sheriff's Department,* our supreme court imposed a duty of care on a county and its sheriff's department because it found the entities created a risk of injury to the appellant. 386 S.C. 285, 293–94, 688 S.E.2d 125, 129–30 (2010). In that case, the appellant, a domestic violence victim, sued the respondents, the county and department, after she was attacked by her ex-boyfriend in a magistrate's court bond revocation hearing in which no security was provided. *Id.* at 287–88, 688 S.E.2d at 127. An employee of the sheriff's department, who was aware of the ex-boyfriend's multiple bond violations and threats against the appellant, requested to schedule the bond revocation hearing, where the ex-boyfriend subsequently attacked the appellant. *Id.* at 288, 688 S.E.2d at 127. Despite being aware of the appellant's fear of her ex-boyfriend, the respondents strongly encouraged the appellant to be present at the bond revocation hearing. *Id.* at 293, 688 S.E.2d at 130. Our supreme court found the respondents could not claim a lack of knowledge of the ex-boyfriend's violent tendencies towards the appellant because the respondents were seeking to revoke his bond for his failing to obey a no-contact order, which was issued in response to his violent actions. *Id.* The court found the respondents "created a situation they knew or should have known posed a substantial risk of injury to [the appellant]," and given their knowledge of the ex-boyfriend's demonstrated threats against the appellant, the

respondents owed the appellant a duty of care. *Id.* at 294, 688 S.E.2d at 130. Importantly, the court noted the respondents' duty "is one of due care and whether [the respondents] acted reasonably, negligently[,] or grossly negligently is not before us." *Id.*

In the instant case, Doe argues The Citadel's duty to Doe is based upon "The Citadel's own affirmative actions that created the circumstances for ReVille to sexually abuse [Doe]," and The Citadel should have foreseen its negligent actions "would probably cause injury to someone in the form of sexual abuse by ReVille." Doe again cites evidence of The Citadel's policy violations and alleged concealment of ReVille's actions. However, we again find any purported violation of the policy does not amount to the existence of a duty, but rather, focuses more on the standards of due care establishing the extent and nature of the duty, which would help a fact-finder determine whether a duty was breached. *See Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006) (rejecting defendants' all or nothing approach with regard to the existence of a duty and noting that argument "confuses the existence of a duty with standards of care establishing the extent and nature of the duty in a particular case"). Unlike *Edwards*, Doe does not present any evidence indicating The Citadel actively created a situation that increased the risk of harm to Doe—such as placing ReVille and Doe in the same room, encouraging the two to meet, or placing Doe in ReVille's custody. In fact, no evidence suggests The Citadel was even aware of Doe's very existence before the commencement of this lawsuit because Doe had no affiliation with The Citadel's programs or camps.

Furthermore, the evidence does not demonstrate The Citadel was aware of ReVille's pedophilia prior to the April 2007 allegations, despite Doe's claims to the contrary. The record does not support Doe's assertions that The Citadel knew of ReVille's sexual misconduct while he was a counselor at the camp. In particular, Doe asserts The Citadel should have investigated and arrested ReVille when Garrott found ReVille alone in his room with a camper in 2002, and again in 2003 when she discovered him in his room rubbing "Icy Hot" on a junior counselor's leg following a run. However, the record does not indicate that any improper behavior was occurring at

the time when Garrott "caught" ReVille to warrant termination or an investigation. Garrott stated, at the time, she did not think either incident amounted to a violation of the camp policies. Instead, she viewed the incidents as "lapse[s] in judgment." Doe's arguments again "confuse the existence of a duty with standards of care establishing the extent and nature of the duty in a particular case." *Madison ex rel. Bryant*, 371 S.C. at 135, 638 S.E.2d at 656. Inasmuch as Doe failed to prove the existence of a duty of care, any argument involving the standards of care are not properly before this court. *See Bishop*, 331 S.C. at 86, 502 S.E.2d at 81 ("An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. Without a duty, there is no actionable negligence.").

In conclusion, while ReVille's continued sexual abuse of Doe was beyond despicable, we find that, as it relates to any failure to respond after the April 2007 allegations, The Citadel's purported failure to intervene did not create a risk of harm to Doe when Doe was already exposed to ReVille's abuse. *See, e.g., DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("While the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him any more vulnerable to them."); *Doe v. Rosa*, 795 F.3d 429, 439 (4th Cir. 2015) ("[A]llowing continued exposure to an existing danger by failing to intervene is not the equivalent of creating or increasing the risk of that danger."), *cert. denied sub nom. John Doe 2 v. Rosa*, —— U.S. ——, 136 S.Ct. 811, 193 L.Ed.2d 715 (2016).

## C. Title IX

■ Doe next argues the federal statute, Title IX of the Educational Amendments of 1972, imposed a duty on The Citadel not to conceal ReVille's sexual abuse following the April 2007 allegations.[7] We disagree.

---

7. We do not find it necessary to address any of Doe's arguments that The Citadel's alleged violations of Title IX demonstrate its failure to act with due care because, as previously mentioned, these arguments involve the standards of due care, which presuppose the existence of a duty. *See Edwards*, 386 S.C. at 294, 688 S.E.2d at 130.

■ A plaintiff will prove the first element of a negligence claim—that the defendant owes him a statutorily-created duty of care—if the plaintiff shows two things: "(1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect." *Rayfield v. S.C. Dep't of Corr.*, 297 S.C. 95, 103, 374 S.E.2d 910, 914–15 (Ct. App. 1988). "Title IX prohibits discrimination occurring under any educational program or activity." *Doe by Doe v. Berkeley Cty. Sch. Dist.*, 989 F.Supp. 768, 770 (D.S.C. 1997). Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a) (2012).

We find Doe's claim fails because he is not a member of the class of persons the statute intends to protect. Title IX intends to protect participants and students of educational programs. *See, e.g., Dipippa v. Union Sch. Dist.*, 819 F.Supp.2d 435, 446 (W.D. Pa. 2011) ("Generally speaking, parents of a student whose rights were violated do not have standing to assert personal claims under Title IX, but do have standing to assert claims on the student's behalf.... On its face, the statutory language of Title IX, 20 U.S.C. § 1681 *et seq.*, applies only to students and participants in educational programs." (citations omitted)); *Doe v. Oyster River Co-op. Sch. Dist.*, 992 F.Supp. 467, 481 (D.N.H. 1997) ("Ordinarily, only participants of federally funded programs ... have standing to bring claims under Title IX."). In the instant case, both parties agree that Doe never attended The Citadel or its summer camps. Because Doe was never a student or participant in any educational program at The Citadel, he is not a member of the class of persons Title IX intends to protect. Thus, Doe failed to prove The Citadel owed him a statutorily-created duty, and we affirm the circuit court's grant of summary judgment.[8]

---

**8.** We do not address Doe's essential purpose requirement argument because we find the resolution of this issue is dispositive. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).

## II. Outrage

██ Last, Doe asserts the circuit court erred in granting summary judgment to The Citadel on Doe's outrage claim because more than a scintilla of evidence exists to establish that The Citadel's conduct was outrageous and directed at Doe. We disagree.

 Under South Carolina law, outrage claims are limited to a defendant's egregious conduct toward a plaintiff. *Upchurch v. N.Y. Times Co.*, 314 S.C. 531, 536, 431 S.E.2d 558, 561 (1993). "It is not enough that the conduct is intentional and outrageous. It must be *directed at the plaintiff*, or occur in the presence of a plaintiff of whom the defendant is aware." *Id.* (emphasis added).

In the instant case, while The Citadel's failure to notify law enforcement of ReVille's alleged abuse in 2007 is highly lamentable, Doe did not present any evidence that The Citadel directed any tortious conduct specifically toward him. Indeed, The Citadel was unaware of Doe's very existence prior to the commencement of this lawsuit. Accordingly, we uphold the circuit court's finding on this issue.[9]

## CONCLUSION

Based on the foregoing analysis, the circuit court's grant of summary judgment to The Citadel is

**AFFIRMED.**

KONDUROS, J., and LEE, A.J., concur.

---

9. Because our resolution of this issue is dispositive, we decline to address whether the circuit court erred in finding the TCA barred Doe's outrage claim. *See Futch*, 335 S.C. at 613, 518 S.E.2d at 598 (ruling an appellate court need not address remaining issues when its resolution of a prior issue is dispositive).